## THE BOARD OF TRADE OF CHICAGO

*v.*

## THE PEOPLE ex rel. William N. Sturges.

1. APPEALS *from circuit court — whether to the Appellate or to the Supreme Court — what is a franchise.* An appeal or writ of error does not lie from the circuit to the Supreme Court in a *mandamus* to compel the restoration of a member of the Board of Trade of Chicago after his expulsion, the right to membership in a private corporation not being a franchise within the meaning of the law giving the right to prosecute appeals and writs of error to the Supreme Court. Such appeal should be taken to the Appellate Court.

2. A franchise is a privilege emanating from the sovereign power of the State, owing its existence to a grant, or, as at common law, to prescription, which presupposes a grant, and is invested in individuals or a body politic.

The word is used in this restricted sense in the statute giving appeals and writs of error from the circuit to the Supreme Court.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Messrs. LAWRENCE, CAMPBELL & LAWRENCE, and Messrs. DENT & BLACK, for the appellant.

Mr. C. BECKWITH, Messrs. McCOY & PRATT, and Messrs. MONROE, BISBEE & BALL, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The relator, having been expelled from the Board of Trade of the city of Chicago, filed a petition in the circuit court of Cook county for a *mandamus*, to compel that body to restore him to membership. On the hearing a peremptory writ of *mandamus* was awarded, in accordance with the prayer of the petition, and respondent brings the case directly to this court, on appeal, notwithstanding the law establishing Appellate Courts was in force when final judgment was pronounced in the cause. The relator moves to dismiss the appeal, on the ground this court has no jurisdiction to hear the errors assigned.

The decision of the motion made involves a construction of the statute under which the appeal was taken that is supposed to confer the right, and which provides as follows: "Appeals and writs of error shall lie from final orders, judgments or decrees of the circuit * * * courts * * * directly to the Supreme Court in all criminal cases, and in cases involving a franchise or a freehold or the validity of a statute." The Practice act, upon the same subject, provides, that "in all criminal cases, and in cases in which a franchise or a freehold or the validity of a statute is involved, appeals shall be taken directly to the Supreme Court in case the party appealing shall so elect, excepting in chancery cases." As this is

not a chancery suit, it is maintained the appeal will lie because it is claimed a "franchise" is involved.

The board of trade is a corporation organized under a special act of the General Assembly, and is a corporation organized solely for the purpose of transacting commercial business, and for no other purpose whatever. The relator was a member of the board, and was entitled to all the benefits of membership. Whether relator was lawfully or illegally expelled, is not a matter that need now be considered. The subject of the present litigation concerns his membership, and his right to be restored to the enjoyment of its privileges. No question is made that in any degree concerns the validity of the corporation, nor has the litigation any relation to it. The inquiry, then, must be, does the membership of the relator come within the definition of a "franchise," as that term is used in the statute? Our conclusion is, it does not.

This court, in *Chicago City Ry. Co.* v. *The People,* 73 Ill. 541, adopted the definition of a franchise as given by Blackstone, that it "is a royal privilege or branch of the king's prerogative subsisting in the hands of the subject, and being derived from the crown must arise from the king's grant," and added, that "corporate franchises in the American States emanate from the government or sovereign power, owe their existence to a grant, or, as at common law, to prescription, which presupposes a grant, and are invested in individuals or a body politic." Precisely the same definition has been uniformly given of a franchise by text writers and courts of the highest authority. Angell & Ames on Cor. sec. 4, 737; *Bank of Augusta* v. *Earle,* 13 Peters, 579; *Morgan* v. *Louisiana,* 3 Otto, 217; *City of Bridgeport* v. *New York and New Hampshire R. R. Co.* 36 Conn. 255; *People* v. *Ætna Ins. Co.* 15 Johns. 358.*

In *The Bank of Augusta* v. *Earle,* it was said by the court: "It is essential to the character of a franchise that it should be a grant from the sovereign authority, and in this country no franchise can be held which is not derived from a law of

the State." As was said in *City of Bridgeport* v. *New York and New Hampshire R. R. Co.* the "term franchise has several significations, and there is some confusion in its use; but when it is used in a statute, or elsewhere in the law, it is generally, if not always, understood as a special privilege conferred by grant from the State or sovereign power, as being something not belonging to the citizen of common right." In *Morgan* v. *Louisiana,* the court very justly remarked that much confusion of thought had arisen from "attaching a vague and undefined meaning to the term franchise."

It must have been in this restricted sense the term "franchise" was used by the General Assembly in the statute we are considering, and not in that broad sense contended for. No doubt the word "franchise" is sometimes used as synonymous with privileges and immunities of a personal character; but in law its appropriate meaning is understood to be something which the citizen can not enjoy without legislative grant. Many of our religious, benevolent, literary and scientific societies and associations are incorporated under general or special laws, but it was never understood that members of such societies or associations possessed or exercised any franchise. What they obtain is what is most appropriately termed "membership," which means freedom of the privileges it confers, and nothing more. That is precisely the case at bar. Relator had membership in this corporation and the freedom of its privileges, whatever they were, but in no just sense did he exercise any franchise granted to him or the corporation by the General Assembly.

It is lawful for any person or association of persons to transact commercial business without legislative grant for that purpose. A corporation for such purposes is a mere convenience, and nothing more. A member of such a corporation exercises no other right in the buying or selling of commodities than what any citizen of common right may do, except, as in the present instance, by virtue of his membership he may transact such business in a room belonging to the corporation, which

is a mere privilege and not a franchise, in the sense that term is used in the statute. One test that might well be applied is, that in case of the non-user or mis-user by the party owning· membership in such a corporation, an information would not lie against him at the suit of the people. It is not understood the people are prosecuting this case further than to give the writ, which any citizen ·may invoke as a statutory right. Further than that the people lend no aid to this prosecution. So far as the General Assembly has granted a franchise to this corporation, it is a matter of no public concern who owns a membership in the corporation.

No franchise, in the sense that term is used in the statute, being involved in this litigation, the motion made must prevail, and the appeal will be dismissed.

*Appeal dismissed.*

SCHOLFIELD and DICKEY, JJ., dissenting:

We do not concur in this opinion. We think that the word "franchise," as used in the constitution and in the statute, was not used in the strict technical sense, but in its broader and more popular sense.