The Chicago and Western Indiana Railroad Co. *et al.*

*v.*

Eugene M. Dunbar *et al.*

*Filed at Mt. Vernon August 11, 1880.*

1. Franchise—*what is, under constitution relating to appeals, etc.* Power in a railroad company to exercise the right of eminent domain in a city is a franchise, within the meaning of that word as used in the constitution, in defining what cases must be taken to the Supreme Court by appeal or writ of error. It is not essential to a franchise, in its legal sense, that it should, in all cases, be exclusive.

2. Supreme Court—*appellate jurisdiction in case of franchise.* Although the direct object of a bill in chancery be not to oust a railroad company from the possession of a franchise claimed by it, but to enjoin it from exercising the right to condemn private property within a city, and a decree is rendered granting the relief sought on the assumed ground that the company has no such right in the case, thus depriving the company of the exercise of the right claimed, an appeal will lie from such decree directly to this court.

Agreed case from the Circuit Court of Cook county; the Hon. John A. Jameson, Judge, presiding.

Messrs. Lawrence, Campbell . & Lawrence, for the Railroad Company:

The question of jurisdiction raised involves a consideration of sec. 89 of the Practice act of 1879, providing that appeals and writs of error, in cases in which a *franchise* or freehold is involved, shall be taken directly to the Supreme Court.

As to what constitutes a franchise, counsel cited *Chicago City Railway Co.* v. *The People,* 73 Ill. 541; Angell & Ames on Corp. sec. 4, 737; *Bank of Augusta* v. *Earle,* 13 Pet. 579; *Morgan* v. *Louisiana,* 3 Otto, 217; *City of Bridgeport* v. *New York and New Hampshire Railroad Co.* 36 Conn. 255; *The People* v. *Ætna Ins. Co.* 15 Johns. 358; 2 Black. Com. 21.

We have in the case at bar a corporation which claims to be clothed by law with the right to locate, construct and operate within the city of Chicago a railroad, which is a *public highway,* by the express provision of our constitution, and to operate the same and take tolls thereon. This right falls directly within Blackstone's definition of a franchise.

The court below has directly adjudicated upon this franchise, and expressly enjoined the railroad company from exercising it. There can certainly be no more direct method of adjudicating upon the franchise in question.

That the right to construct and operate a railroad and take tolls thereon is a franchise, is clearly shown by the decisions of the courts in numerous cases. *Charles River Bridge* v. *Warren Bridge,* 11 Pet. 420; *Pervine* v. *Chesapeake and Delaware Canal Co.* 9 How. 184; *Olcott* v. *Supervisors,* 16 Wall. 678; *Blissett* v. *Hart,* Willis, 512; *Whiting* v. *S. and F. Railroad Co.* 25 Wis. 197; *Beekman* v. *Saratoga and S. Railroad Co.* 3 Paige, 75; *Olcott* v. *Bonfield,* 4 N. H. 545; *State* v. *Boston, etc., Railroad Co.* 25 Vt. 442; *Erie and N. E. Railway Co.* v. *Casey,* 26 Pa. St. 287; *Boston, etc., Railroad Co.* v. *Salem, etc., Railroad Co.* 2 Gray, 27; *Raritan, etc., Railroad Co.* v. *Canal Co.* 18 N. J. (Eq.) 570; *Del. Lack., etc., Railroad Co.* v. *Erie,* 21 N. J. (Eq.) 298; *McGregor* v. *Erie Railroad Co.* 25 N. J. 97; *Blake* v. *Railroad Co.* 19 Minn. 418.

As to the jurisdiction of this court of this case, see also *Cairo and Vincennes Railroad Co.* v. *The People*, 92 Ill. 170.

Mr. CHARLES H. MORSE, for Dunbar *et al.*:

This is not a case "involving a franchise" within the meaning of those words as used in the act of June 3, 1879. It may possibly be considered as involving a franchise in some incidental, collateral or remote manner. But to come within the meaning of the statutory words, it must be a case *directly* involving a franchise, and the decree rendered in it must be one conclusive of the right until reversed.

The concluding words of the statute referred to seem to have been taken from the earlier acts of Kentucky and Virginia. The Virginia act has been construed in the cases of *Hutchinson* v. *Kellam*, and *Lymbrick* v. *Sheldon*, 3 Munf. 202; see also *Shipwith* v. *Young*, 5 id. 276; *Rose et al.* v. *Choteau*, 11 Ill. 167; *Morris et al.* v. *City of Chicago*, id. 650; *Norton* v. *Saunders*, 3 J. J. Marshall, 396; *Briscoe* v. *Briscoe*, 3 A. K. Marshall, 498; *Briscoe* v. *Briscoe*, 1 Litt. 363; *Board of Trade of Chicago* v. *The People*, 91 Ill. 80; *The People* v. *Holtz*, 92 id. 429.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

Application is made for an order to dismiss these proceedings from this court. The determination of this application turns upon the question whether a franchise is involved in this case. By the act of 1879, all cases in which a franchise is involved must be taken directly to the Supreme Court. (Laws 1879, p. 222.)

Dunbar and Valentine filed a bill in chancery, in the Superior Court of Cook county, against the Chicago and Western Indiana Railroad Company and others, and procured a decree enjoining the defendants in that court from bringing the railroad of that company within the limits of the city of Chicago, and from proceeding to condemn a certain city lot, belonging to Dunbar, in the city, which lies adjacent to a part

of the railroad of that corporation already constructed within the city.

The ground stated in the bill, for the relief sought, (and on which the decree is based,) is as charged in the bill, that "said Chicago and Western Indiana Railroad Company had no authority to construct and operate its line of railroad in the city of Chicago * * * or to purchase, hold or own any land or other property within the said city." The reason in support of this proposition alleged in the bill is, that the city has passed no valid ordinance locating the line of said railroad, or fixing its terminus.

The record shows that the court below decided, as a basis of its decree, " that the passage of a valid ordinance, locating the precise route of the railroad, * * * is a condition precedent to the exercise of the power of eminent domain by the railroad company to acquire private property within the city for corporate purposes, and that no such ordinance was passed."

In the answers defendants assert the right of that corporation, under its articles of association, and the statute of the State, (without the passage of any ordinance by the city,) to locate, construct and operate its road within the city in all respects, except in the crossing of streets, and also claimed the right to condemn private property for corporate purposes along its proposed line, without any city ordinance whatever.

The case, then, not only involves, but in a vital point turns upon, the question whether the railroad corporation is or is not now clothed with power lawfully to condemn private property within the city of Chicago.

The decision of this motion must then depend upon the question whether power in a railroad company to exercise the right of eminent domain in a given city is or is not a franchise, within the meaning of that word as used in our constitution and laws.

The question as to the precise sense in which that word is so used is not free from difficulty. It would perhaps not be

wise to attempt, in the decision of any one case, to define its limits in every respect, or to attempt to enumerate all the cases to which the word franchise, under our laws, must be held to apply.

This court has held that a license by a city to use a street for a horse railway is not a franchise— *C. C. R. R. Co.* v. *The People,* 73 Ill. 547—and said in that case: "Corporate franchises in the American States emanate from the government, or the sovereign power, owe their existence to a grant, or, as at common law, to prescription, which presupposes a grant, and are vested in individuals or a body politic."

The word franchise is used with various meanings. In its broad and popular sense it embraces the right of trial by jury, the right to *habeas corpus*, the right to vote at an election, the right to membership in voluntary associations or corporations, the right to hold an office, and perhaps other rights.

This court has decided that the right to membership in the board of trade is not a franchise, within the meaning of our constitution and statutes. *Board of Trade* v. *The People ex rel.* 91 Ill. 80. In the opinion of this court in that case reference is made to Blackstone's description of a franchise as "a royal privilege or branch of the king's prerogative, subsisting in the hands of the subject, and, being derived from the crown, must arise from the king's grant," and also to the language of Chief Justice TANEY, in *Bank of Augusta* v. *Earle,* that "it is essential to the character of a franchise that it should be a grant from the sovereign authority." 13 Pet. 595. And this court in that opinion adopts the language of the court in the case of *City of Bridgeport* v. *New York and New Hampshire R. R. Co.,* in which, speaking of the term franchise, it is said: "When it is used in a statute or elsewhere *in the law,* it is generally, if it is not always, understood as a special privilege conferred by grant from the State or sovereign power, as being something not belonging to the citizen of common right." And it is said

by this court: "It must have been in this restricted sense the term franchise was used in the statute we are considering."

Examining, then, the term franchise in this restricted and legal sense, it will be found to be used sometimes in a more extended, and sometimes in a more limited sense. It is, in law, sometimes used to mean an *exclusive* right held by grant from the sovereign power,—such in its nature that the same right can not be granted to another without an invasion of the franchise of the first grantee. The strictly legal signification of the word is not always confined to exclusive rights; but the term is used in law to designate powers and privileges which are not exclusive in their nature. The Supreme Court of the United States, speaking through Chief Justice TANEY, has said: "Franchises are special privileges conferred by government upon individuals, and which do not belong to the citizens of the country of common right." The term, according to Blackstone, embraces in its legal meaning several kinds of rights, some exclusive and some not exclusive. Kid says: "A corporation is a political person capable of enjoying a variety of franchises." SPENCER, J., says: "If there are certain immunities and privileges in which the public have an interest, as contradistinguished from private rights, and which can not be exercised without authority derived from the sovereign power, it would seem to me that such immunities and privileges must be franchises." 15 Johns. 387. And so the Supreme Court of New York held in that case, unanimously, that the right of an insurance company to carry on banking business was a franchise, although the judges differed on the question whether the defendant in that case had lawful right to such franchise.

Our constitution making provision for inferior appellate courts provides that appeals and writs of error should lie to the Supreme Court in all criminal cases, and cases in which a franchise or freehold, or the validity of a statute is involved,

and as to appeals and writs of error in other cases, the legislature was left to exercise its discretion.

These cases specially named seem to have been regarded of a nature so important that the parties interested therein should not, by the legislature, be deprived of a hearing before the Supreme Court. The fact that a franchise is classed here in importance with a freehold, and with questions as to the validity of a statute, indicates that the term, as here used, had no light signification. And, accordingly, this court has held that the term is used strictly in its legal sense, and not in its broad and popular sense, and has held, as stated above, that the right to be a member of the board of trade of the city of Chicago was not such a franchise, and in the case of *The People* v. *Hultz*, 92 Ill. 426, it was held that the right to hold the office of school director was not such a franchise. Discussing that question, reference is made, in that case, to the enumeration by Blackstone of divers franchises, which he mentions as illustrations of his definition. In this enumeration is found the franchises of a corporation. And it is there said, if his enumeration is to be taken, the number of cases is small in which a franchise may be involved. This is clearly an intimation (although the question was not then before the court) that the franchises of a corporation are within the meaning of the term as used in our constitution and laws. At the time when our constitution was adopted corporations in this country had become very numerous, and many of them had acquired stupendous influence and power in the affairs of men. Of the franchises which were usually enjoyed and exercised at the time of the adoption of our constitution, very much the greatest in number and importance were those exercised by corporations. The danger to the community which might arise out of the usurpation of unlawful powers as franchises by corporations was fully appreciated by the framers of the constitution. Special provisions were inserted in the constitution limiting and restraining the exercise of the power of the legislature in the creation of

37—95 ILL.

corporations, and the constitution imposed especial restraints upon railroad corporations, and enjoined upon the legislature to pass laws to correct and prevent abuses of the powers which were deemed necessary to be conferred upon corporations. It may also be assumed that the framers of the constitution also appreciated the liability of corporations to be denied a fair hearing in local courts, in relation to the extent of their franchises, and for both these reasons provided for them the protection of the clause referred to. That corporations possessed franchises, in the legal sense of the term franchise and in the sense in which that term is used in the constitution, is made manifest in the constitution itself.

In the 11th section of the 11th article it is provided, that " no railroad corporation shall consolidate its stock, property or *franchises* with any other railroad corporation owning a parallel or competing line." And in the 15th section of the same article, it is provided that certain laws shall be enforced against railroad corporations, "by adequate penalties, to the extent, if necessary for that purpose, of forfeiture of their property and *franchises.*" It is not only the right to exist as a corporation that is recognized as a franchise, but the constitution speaks of *franchises,* in the plural number. It is their *franchises* which shall not be consolidated by corporations having parallel lines, and it is their *franchises* which are to be forfeited for the enforcement of laws passed to prevent the abuse of their powers.

If railroad corporations, then, possess franchises, within the meaning of the constitution and laws, the question arises, what are the most important franchises with which they are clothed, aside from the franchise which consists of the right to exist as a corporation?

It would seem that the right to condemn private property for corporate use is perhaps the most important franchise of which a railroad corporation can be possessed—the highest exercise of power. Such a right is essentially a part of the sovereign prerogative. No private individual is clothed with

such power. A private citizen having adequate means, and owning the lands upon which it is necessary to operate, might, without legislative grant, construct a railroad and use it for the purposes of transportation and for hire. He might lawfully demand and receive compensation or tolls for the use of the road. Such a power, in the hands of a private citizen, is not a franchise, while, in the hands of a corporation, it is undoubtedly, in one sense, a franchise. A private citizen, however, without a legislative grant, has no power to seize and take the property of another citizen merely because it might be needed for his railroad. Such power can be exercised by a natural or artificial person, (other than the State,) only by legislative grant. According to the definition of a franchise, given by Chief Justice TANEY, the right of eminent domain is surely a franchise, for it is "a special privilege conferred by government upon individuals, which does not belong to citizens of the country in general, of common right."

There is no quality attached to a franchise, by any definition that has been given by any court or law commentator, which is not found to be a quality of this franchise, unless it be the quality of being exclusive. But as we have seen, it is not essential to every franchise, even in its legal sense, that it should, in all cases, be exclusive. The right to issue bank notes to circulate as money is undoubtedly a franchise, and yet that right may be conferred upon one bank without, in any degree, invading a like right conferred upon another bank.

After a careful consideration of the question, we can have no doubt that the right to condemn private property for corporate purposes is a franchise, within the meaning of the term as used in our constitution and law.

But it is insisted that the right of eminent domain is not involved in this controversy—that the object of the bill is merely to restrain the exercise of the right. It will be observed that the statute does not limit the right of appeal, in

such cases, to suits which are instituted directly for the purpose of determining the right to the franchise or the title to the franchise. The language of the statute applies to the cases in which the franchise is involved. Now, in this case, the injunction restraining the defendant, in the court below, from the exercise of this right is founded expressly upon the decision of the court that the right is not possessed; hence, although the direct object of the suit is not to oust the defendant from the possession of the franchise, yet the right to the franchise is wrapped up or involved in the controversy. In fact the controversy is made to turn upon the question of the possession of the right by the railroad company.

The application to dismiss the proceedings out of this court must be overruled.

*Application overruled.*

WALKER, CRAIG and SCHOLFIELD, JJ., concur in the conclusion that this case does involve a franchise, and that application to dismiss must be overruled.