:36 LRA 381
88 LRA 221

# THE CITY OF BELLEVILLE

*v.*

# THE CITIZENS' HORSE RAILWAY COMPANY.

*Filed at Mt. Vernon October 22, 1894.*

152 171
164  77
152 171
79a 605
152 171
178 605
152 171
180 499
152 171
182 389
152 171
186 ³293
152 171
187 ⁹394
152 171
190 ⁹547
152 171
192 ⁸811
152 171
194 ⁸548
196 ¹140
152 171
199 ⁵347
152 171
e104a ²540
105a ³150
152 171
212 ²592
e214 ⁵626

1. SUPREME COURT—*jurisdiction to find facts in chancery cases.* In chancery cases the Supreme Court determines controverted questions of fact from the evidence found in the record, and is not bound by the findings of the Appellate Court.

2. STREET RAILWAY—*when right to lay track is a mere license.* Where the charter of a street railway company requires it to procure the consent of the city to the laying of its tracks, an ordinance of the city granting that privilege is a mere license, and not a franchise.

3. SAME—*when license to lay track becomes a contract.* If the grant to lay tracks be upon adequate consideration, and is accepted, or if such grant be acted upon in such substantial manner that to revoke it would be unjust, it ceases to be a mere license, and becomes a valid contract.

4. SAME—*right of city to avoid contract on breach of condition.* Where a street railway company fails to perform certain acts which the ordinance constituting the contract annexes to the grant as conditions subsequent, the city may, if that power is reserved by the ordinance, terminate the contract by repealing the ordinance and by notifying the company to remove its tracks, and for this purpose no previous judicial determination is required.

5. SAME—*property in custody of court of chancery.* Where a street railway is in the custody of a court of chancery, it is proper and necessary for the city, upon forfeiture of the company's contract, to petition the court for leave to remove the track from its streets, and it is not a forfeiture of the company's franchise for the court to grant such relief.

6. CONTRACT – *construction, where right to terminate is reserved.* Where one party to a contract expressly reserves the right to terminate it upon the non-performance by the other of certain conditions subsequent, such party, upon breach of such conditions, is relieved from showing that the default was in a matter vital to the contract, as would be the case had not the parties expressly agreed as to what would justify forfeiture.

7. The failure to perform such a condition subsequent does not of itself avoid the contract, but gives the other party the option to avoid it.

8. CITY—*cannot forfeit property by ordinance.* A city cannot, by ordinance, forfeit to itself the property of a street railway company which has not performed its contract with the city; but a sec-

tion of an ordinance which attempts to do this, though void, will not invalidate other sections of such ordinance which are distinct and separately enforceable.

9. PRACTICE—*in chancery—hearing oral evidence.* It is within the judicial discretion of a chancellor to hear witnesses himself, instead of having their testimony taken by the master.

10. SAME—*motion to empanel jury in chancery—when too late.* A motion to empanel a jury to hear and determine questions of fact in a chancery case should be made in apt time. It is too late after the cause is reached for trial and the witnesses are in attendance.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. B. H. CANBY, Judge, presiding.

The Citizens' Horse Railway Company, appellee herein, was granted the right and privilege of laying its track and operating its road along certain streets in the city of Belleville, under and by virtue of an ordinance passed December 21, 1885. Section 1 granted the right and named the route. Section 2 required the company to pay owners of abutting property damaged, if any, by reason of the construction of the road. Section 3 provided that the rights granted to the company were subject to the right of the city to use, improve and repair the streets, "and to make all necessary police regulations concerning the management and operation of said railroad." Section 4 provided that the streets should not be obstructed longer than was necessary, and that the road must be constructed and operated within a certain time. Section 5 required the company to keep the streets in repair between the rails of its tracks. Section 6 provided that all rights theretofore granted to the Belleville Railway Company should be granted and renewed to the appellee, as its successor. Section 7 regulated the passenger fare. Section 8 provided that "upon the failure of said company to comply with any condition herein named, the said council shall have the power, which it hereby expressly reserves, to repeal the ordinance and revoke the

consent hereby given." It also provided that "the right herein granted shall be forfeited as to such portion of the streets as are not used within two years." Section 9 : "If said company shall fail to operate the said horse railroad regularly for a period of thirty days, or fail to run a car over said road to pass a given point at least every fifteen minutes at regular intervals in the daytime, unless said failure is caused by accident to its property in said city or its route therein, the rights and privileges hereby granted shall at once cease and determine, and unless said company, within sixty days thereafter, shall remove its tracks, turn-outs and switches from the streets then occupied by said railroad, and put said streets in good repair, the said tracks, turn-outs and switches shall be forfeited to said city."

Another ordinance, passed October 4, 1886, required that the company should run its cars, where its track passed any railroad depot, so as to make connection with passenger trains. Another ordinance, passed July 21, 1890, required that the company should run a car east from its west terminus at half-past nine and half-past ten o'clock every night, and from its east terminus at ten and eleven o'clock every night.

The appellee, on the 7th day of October, 1886, made and executed its trust deed to J. D. Perry and L. G. McNair on all its property, privileges, etc., to secure $25,000 of bonds issued by the company for the construction and equipment of its road, which drew six per cent interest, payable semi-annually. No interest having been paid on the bonds, the trustees, on the 11th day of September, 1891, filed a bill in the circuit court of St. Clair county to foreclose said trust deed, declaring the whole debt due under the provisions of the trust deed, averring the insolvency of the company, and making the company, John Thomas, (who was alleged to be the sole owner of the bonds and coupons,) and the city of Belleville, parties defendant,—the latter on the ground that it had threat-

ened, and was threatening, to tear up and destroy the track of the company,—prayed for a strict foreclosure, the appointment of a receiver, and asked for a writ of injunction to restrain the city of Belleville from executing its threats. A temporary injunction was granted, and John Thomas was appointed receiver on the 21st of September, 1891, and he took possession of and operated the road. Thomas soon resigned, and Ryder was thereafter appointed, and he continued to operate the road.

Prior to the filing of the bill, complaint was made by the city that the company was not keeping the track in repair, and on the 18th day of June, 1891, the president of the company was served with written notice to repair at once the track along Main, Illinois and Charles streets. At a meeting of the city council on the 8th day of September, 1891, it was ordered that the officers of the company be served with notice to appear at a council meeting to be held September 21, to show cause why the ordinance granting the company the right to lay its track and operate its road should not be repealed. Notice was served on the company on the 10th day of September. At the meeting on September 21, 1891, an ordinance was offered repealing all ordinances relating to the rights and privileges granted to the appellee, but the consideration of the same was postponed until a meeting of the council on the 4th day of January, 1892, when it was taken up and passed, at which time, as heretofore stated, the road was in the hands of the receiver. The repealing ordinance, after referring to and reciting those portions of the ordinances heretofore mentioned, granting rights and privileges to the company and imposing certain duties, and to the powers reserved of repealing the same, provides as follows :

"Inasmuch, therefore, as the Citizens' Horse Railway Company did not reasonably comply with the duties and obligations imposed by sections 5 and 9 of said ordinance

No. 185, nor with the duties and obligations imposed by ordinances Nos. 275, 201, 446 and 171, therefore—

"*Be it ordained by the City Council of the City of Belleville, Illinois:*

"Sec. 1. That ordinances Nos. 446, 185, 171, 201 and 275, and all ordinances in relation to the Citizens' Horse Railway Company, except ordinance No. 287, be and the same are hereby repealed, and all the rights and privileges by said ordinances granted are hereby revoked.

"Sec. 2. That the city clerk be instructed to notify the said Citizens' Horse Railway Company to remove its tracks, switches and turn-outs from the streets of the city of Belleville within sixty days after the passage of this ordinance.

"Sec. 3. That if said tracks, switches and turn-outs be not removed within sixty days after the passage of this ordinance, and such notice shall have been given as is provided in section 2 of this ordinance, the same are hereby declared forfeited to the city of Belleville, and the street inspector be instructed to remove the same."

On the 16th day of March, 1892, the city of Belleville filed its petition in the foreclosure suit, averring that the company had not complied with the ordinances of the city, wherefore it had passed the repealing ordinance above noted, which had not been observed by the company, and it concluded with the following prayer: "In consideration of the premises your petitioner asks leave of this honorable court to remove the tracks, turn-outs, switches, etc., of said Citizens' Horse Railway Company, or said street railway, from the streets of said city of Belleville." A motion made by the complainants in the foreclosure proceeding to strike the petition from the files was overruled by the court.

On the 31st day of March, 1892, the city of Belleville filed its answer to the original bill, denying all the material allegations of the bill, except that part charging that it threatened and intended to tear up and remove

the tracks of the company, which it averred and affirmed was its right to do under and by virtue of its ordinances.

The company and trustees answered the petition of the city of Belleville, denying the facts in it stated, and also the right of the city to repeal said ordinances and remove the tracks, and averring that the remedy, if any, was at law. The answer also averred that it was contemplated to change the motive power and put in an electric line and repair and renew the old line; that if that was not permitted, then that the Citizens' Horse Railway Company, or those interested in it, were ready and willing to comply with every condition contained in ordinances under which said road is now being operated; that the earnings of the Citizens' Horse Railway Company are not sufficient to make repairs on said road, but if the court required it, the Citizens' Horse Railway Company is ready and willing to give a good and sufficient bond, to be approved by the court, in such amount as it might determine, conditioned for the faithful performance of all the conditions and obligations contained in said ordinances, and to improve, repair and keep in constant repair the said road, tracks, cars, etc.

The trustees and the railway company, after the cause was at issue, moved the court to refer the whole matter to the master to state the account of indebtedness, and also to take evidence on the petition, and to report the same to the court, which motion was overruled, whereupon the same parties moved that a jury be called to try the issue on the petition, which motion was also overruled.

The cause was heard on the bill for foreclosure, answer and replication, and also upon the intervening petition of the city of Belleville, and the answers of Perry and McNair, the trustees, and of the Citizens' Horse Railway Company, thereto, and the replications of the city of Belleville to such answers, and the evidence.

The findings of the court were in substance as follows : That the Citizens' Horse Railway Company for a long time failed to operate its street railway in compliance with the terms and conditions under which the company had a right to operate a road in the city of Belleville, and that said company also failed to keep its track and road-bed in proper and good repair ; that it was notified to appear and show cause why its rights and privileges under the ordinances of the city should not be revoked ; that the repealing ordinance was passed as alleged, and that the company had failed to remove its tracks, and that the tracks are out of repair and in bad condition, etc. ; that said trust deed was a valid lien on all the property rights, etc., of the railway company ; that the trustees were entitled to a decree of foreclosure for the entire debt, which was found to be $32,250, all of which debt is due to George Atterbury ; that the company is insolvent and the property not of the value of the debt, and that the property would be taken for the debt and the debt discharged, and that no benefit would arise from a sale being made,—from which findings the court decreed :

*First*—That the Citizens' Horse Railway Company take up and remove its tracks from the streets of the city of Belleville within sixty days from May 2, 1892, and on failure to do so the city is authorized and empowered to remove such tracks, etc.

*Second*—It is decreed that the receiver pay certain expenses made by him, out of funds in his hands, or that may come to his hands, which are declared a prior lien to the bonded indebtedness.

*Third*—That the company pay George Atterbury, the sole owner of the bonds, $32,250 within three months from the date of the decree, and certain other small amounts to other parties, whereupon, if paid, the trustees are to reconvey the property to the company, but on default the company to be forever barred, and George Atterbury to

get the title to and possession of the road from any one in possession thereof, on the production of a certified copy of this decree, under penalty of contempt for any one failing to comply, and the company to make him a deed of conveyance for "each and all of its property, both real and personal, powers, rights and privileges and franchises heretofore described as belonging to said company."

The Citizens' Horse Railway Company appealed to the Appellate Court, and assigned the following errors : First, the circuit court erred in deciding that the city could, before any judicial examination or adjudication that the railway company had violated any of the rights, powers, privileges and franchises granted it by the ordinances of said city to operate its railway, pass an ordinance revoking such rights, powers, privileges and franchises, and forfeiting the property of said railway company to said city; second, the circuit court erred in decreeing a forfeiture against the railway company in this proceeding, and in not striking the petition of the city from the files ; third, the circuit court erred in finding and decreeing a forfeiture against the Citizens' Horse Railway Company on the evidence in the record ; fourth, the circuit court erred in deciding that there was any evidence to authorize a forfeiture under the grounds specifically declared as authorizing a forfeiture by ordinance No. 185 ; fifth, the circuit court erred in improperly admitting all the evidence as to the condition of the road-bed and tracks after September 22, 1891,—the date when the receiver took possession of the railway; sixth, the circuit court erred in denying the motion to empanel a jury to hear and determine all the questions of fact raised on the petition filed by the city, and in refusing to refer said petition, as well as the original suit, to the master in chancery, to take and report all evidence offered by either party, to the court, before final hearing ; seventh, the circuit court erred in decreeing a forfeiture without the railway company, or the owner of the mortgage bonds, being made a party to the petition

filed by the city; eighth, the circuit court erred in hold-
ing that the city attorney had any power or authority from
the city council to file the petition on which a forfeiture
was declared.

The judgment of the Appellate Court reversed that part
of the decree from which the appeal was prosecuted, and
remanded the cause, with directions to strike the petition
of the city of Belleville from the files, (*Citizens' Horse Rail-
way Co.* v. *City of Belleville*, 47 Ill. App. 388,) and thereupon
the city appealed to this court.

Mr. AUGUST BARTHEL, Mr. JAMES A. FARMER, and
Messrs. TURNER & HOLDER, for the appellant :

The authority given by the city to the appellee was a
license, and became, by the acceptance of the company,
a contract, the same as a contract made between individ-
uals, subject to the same rules of law, enforceable, revoca-
ble, and to be annulled in the same manner, as if between
two individuals. *Railway Co.* v. *People*, 73 Ill. 541 ; *Quincy*
v. *Bull*, 106 id. 337 ; *Gas Light and Fuel Co.* v. *Town of Lake*,
130 id. 42 ; *Railroad Co.* v. *Leavenworth*, 1 Dill. 392.

If authority is given to construct a railway in the
streets of a city or town, provided the company first ob-
tains the consent of such municipal corporation, such cor-
poration may impose reasonable conditions upon which
the road shall be built, as, that it shall pay all damages
which shall accrue to property owners, or any condition
which is deemed essential for the protection of the inter-
ests of the public or the safety or convenience of travelers
upon the streets or highways. 2 Wood on Railway Law,
sec. 273 ; *Railroad Co.* v. *Capps*, 72 Ill. 188 ; *Railroad Co.* v.
*Leavenworth*, 1 Dill. 329.

The power conferred upon a city to give or withhold
its consent to the construction of a railroad within its
limits, is not limited to saying yes or no. In giving such
consent the city may attach conditions. *Joy* v. *St. Louis*,

138 U. S. 1; *Railway Co.* v. *Sioux City*, id. 98; *Gas Light and Fuel Co.* v. *Town of Lake*, 130 Ill. 45.

Having attached a condition to an ordinance granting a privilege or license to a corporation to construct a street railway in its streets or to lay water or gas-pipes, the corporation or individual seeking such privilege, and accepting the provisions of such ordinance, takes the privilege granted subject to all the conditions in such ordinance contained, and the city authorities may by force assert the rights of the city reserved by such conditions. *Gas Light and Fuel Co.* v. *Town of Lake*, 130 Ill. 45; *Havelman* v. *Railway Co.* 79 Mo. 641; *Knight* v. *Railroad Co.* 70 id. 231.

Mr. J. M. HAMILL, for the appellee :

It is the invariable rule that proceedings having for their sole object the forfeiture of corporate privileges or corporate property are the exercise of an extraordinary and unusual power, and will be subjected to the strictest scrutiny before the power will be permitted to be exercised.    Courts, in revoking such privileges or in forfeiting such property, proceed with the greatest caution and the utmost deliberation, for their judgments, when rendered, may carry with them, in their execution, interests of vital importance and effects far-reaching in their results.    *State* v. *Farmers' College*, 32 Ohio St. 487 ; *State* v. *Benefit Ass.* 42 id. 584.

A forfeiture is never favored or implied, consequently any pleading setting forth grounds for forfeiture must be specific and the allegations thereof must be proved conclusively.    Wait on Insolvent Corp. sec. 124.

The city council, in attempting to pass the ordinance repealing the rights and franchises of the railway company and forfeiting its property before any judicial examination or adjudication that the ordinance had been violated by the company, arbitrarily arrogated to itself, as a legislative body, the functions and powers of the judiciary, thereby violating the provisions of the consti-

tutions both of the State of Illinois and the United States. Const. of Ill. art. 3, and sec. 2 of art. 2; sec. 1, art. 14, of amendments to const. of U. S.

It is a well established principle of law that a corporation cannot be dissolved, by reason of misuser or non-user of its franchises, until a default has been judicially determined.   2 Kent's Com. 312, 305 ; Angell & Ames on Corp. 835 ; Cooley's Const. Lim. (5th ed.) 337 ; *Dartmouth College* v. *Woodward*, 4 Wheat. 518 ; *New Jersey* v. *Wilson*, 7 Cranch, 164 ; *Bank* v. *Sharp*, 6 How. 301 ; *Binghampton Bridge case*, 3 Wall. 5 ; *Enfield Toll Bridge* v. *Connecticut River Co*. 7 Conn. 53 ; *Grammar School* v. *Burt*, 11 Vt. 632 ; *State* v. *Heyward*, 3 Rich. 389 ; *People* v. *Manhattan Co*. 9 Wend. 351 ; *University* v. *Williams*, 9 G. & J. 402 ; *Commonwealth* v. *Cullen*, 13 Pa. St. 132 ; *Bridge Co*. v. *Hoboken Co*. 13 N. J. Eq. 81 ; *State* v. *Bank*, 7 Ohio, 125 ; *Louisville* v. *University*, 15 B. Mon. 642 ; *Bruffett* v. *Railway Co*. 25 Ill. 310 ; 1 Dillon on Mun. Corp. (4th ed.) secs. 345, 346.

The powers of the city are wholly legislative in their character, and not judicial.  The power to determine whether the railway company had violated any of the terms or conditions of the ordinance under which it operated its road is purely judicial, and the city had no authority, under the law, to exercise judicial power. *Galesburg* v. *Hawkinson*, 75 Ill. 153 ; *Bruffett* v. *Railway Co*. 25 id. 310 ; *Detroit* v. *Plank Road Co*. 43 Mich. 140 ; *Plank Road Co*. v. *Woodhull*, 25 id. 112.

Ordinances of municipal corporations may impose penalties on parties guilty of violation thereof, but they cannot impose forfeiture of property or rights without express legislative authority.   *State* v. *Ferguson*, 38 N. H. 324 ; *Phillips* v. *Allen*, 41 Pa. St. 481.

The forfeiture of franchises does not include the forfeiture of property.  Property rights cannot be confiscated by the State or any of its municipalities, or prevented from devolving according to the ordinary rules of equity and the common law.  Morawetz on Private Corp. (2d ed.)

sec. 1033 ; *Bacon* v. *Robertson,* 18 How. 486 ; *Bank* v. *Chambers,* 8 S. & M. 52 ; *Rowland* v. *Furniture Co.* 38 Ohio St. 270.

Even where the right is expressly reserved in the charter or contract to forfeit the franchises of the corporation, still no forfeiture can be declared by the legislature until a legal examination and adjudication are first made by the court ; and if the legislature itself does not possess this right, the consent of the corporation cannot confer the right.     *University* v. *Williams,* 9 G. & J. 410 ; *C. & C.* v. *Railroad Co.* 4 id. 144 ; *Plank Road Co.* v. *Woodhull,* 25 Mich. 99.

Information in the nature of *quo warranto* is the proper remedy in all cases of non-feasance or malfeasance, or abuse of power and misuse of privileges, by a corporation chartered by the State, and ouster the proper judgment.     *Reed* v. *Canal Corp.* 65 Me. 132.

A forfeiture can never be taken advantage of or enforced against a corporation collaterally or incidentally, or in any other mode than by a direct proceeding for that purpose.     Wait on Insolvent Corp. sec. 403 ; *Powder Co.* v. *Sinsheimer,* 46 Md. 315 ; *Briggs* v *Canal Co.* 137 Mass. 74 ; *Canal Co.* v. *Kittridge,* 5 Saw. 44.

If the franchise granted by the State, or by the city through the State, has been abused or violated, that is a public wrong which the people must resent.     Hence the origin of the rule that the government or people are the proper party to institute forfeiture proceedings, and a court of law, rather than a court of equity, is the forum to determine a forfeiture.     Wait on Insolvent Corp. sec. 400 ; *Whitney* v. *Wyman,* 101 U. S. 392 ; *Bank* v. *Mathews,* 98 id. 628 ; *State* v. *Turnpike Co.* 21 N. J. L. 9 ; *Commonwealth* v. *Bridge Co.* 20 Pa. St. 185 ; *Farnham* v. *Canal Co.* 61 id. 265 ; *State* v. *Moore,* 19 Ala. 514 ; *Rice* v. *Bank,* 126 Mass. 300 ; *Merrick* v. *Van Santvoord,* 34 N. Y. 208 ; *People* v. *Railroad Co.* 42 id. 308 ; *Dock Railroad Co.* v. *Railroad Co.* 32 N. J. Eq. 755 ; *People* v. *Railroad Co.* 9 Mich. 285 ; *People* v. *Railroad Co.* 24 N. Y. 279.

Mr. JUSTICE BAKER delivered the opinion of the court:

In our opinion the evidence establishes these facts: That for a period of more than one year prior to its going into the hands of a receiver, the Citizens' Horse Railway Company, appellee, did not comply with the provisions of section 5 of ordinance No. 185, by keeping in repair so much of the streets as is between the rails of its tracks; that during said year or more it frequently, if not continuously, failed to operate its railroad regularly for a period of thirty days, thereby violating one of the requirements of section 9 of the ordinance, and it is to be noted that what this provision denounces is not an entire failure to operate the road, *in any way whatever*, for a period of thirty days, but a failure "to operate the road *regularly* for a period of thirty days." The word "regularly" is defined as meaning, in a regular manner; in a way or method accordant to rule or established mode; in uniform order; methodically; in due order; and such is the signification attached to the word in its common and ordinary use. That appellee had, in violation of another requirement of section 9, failed, for said period of more than a year, to run a car over its road, or any portion of it, so as to pass a given point at least every fifteen minutes at regular intervals in the daytime, and that such failure was not the result of an accident to its property or to its route; that appellee, during said period, wholly failed to comply with the provisions of ordinance No. 275, which required it to run a car, starting from the terminus of its railroad in the west end at half-past nine o'clock every night, a car starting from the railroad's eastern terminus at the Louisville and Nashville railroad depot at ten o'clock every night, and a car starting from said west end at half-past ten every night, and a car starting from said eastern terminus at eleven o'clock every night; that since appellee had been in charge of a receivership, neither of its receivers had complied with, or attempted

to comply with, any of the provisions above referred to, of the ordinances of the city; that on June 18, 1891, the city of Belleville served a written notice on appellee, and on divers and sundry occasions, both prior and subsequent to that date, notified it of its failures to conform to the provisions and requirements of the ordinances, and requesting it to comply therewith; that a written notice was served on appellee to appear before the city council of the city of Belleville at a designated time and place, and show cause why the city should not avail itself of its right to repeal ordinance 185, and ordinances 171, 275 and 446, and revoke the rights thereby granted, and that appellee, by its agents and attorneys, did appear before the city council, and failing to show any reasonable cause or excuse in the premises, ordinance No. 315, repealing ordinances numbered 171, 185, 201, 275 and 446, was passed, and appellee ordered to take up its tracks, switches, etc., within sixty days.

It appears from the findings and decree of the circuit court that it found the above stated facts substantially as we have found them. The Appellate Court reversed the decree, and counsel for appellee assumes that it found the facts otherwise, and the claim is made that the findings of the Appellate Court as to questions of fact, and mixed questions of law and fact, are final, and not subject to review in this court. Such is not the law. In chancery cases the finding of facts by the Appellate Court does not bind the Supreme Court, and in reviewing chancery cases the Supreme Court will determine controverted questions of fact from the evidence found in the record. *Fanning* v. *Russell,* 94 Ill. 386; *Hayward* v. *Merrill,* id. 349; *Joliet and Chicago Railroad Co.* v. *Healy,* id. 416; *Stillman* v. *Stillman,* 99 id. 196; *Moore* v. *Tierney,* 100 id. 207; *French* v. *Gibbs,* 105 id. 523.

Counsel for appellee also confounds, in his printed brief, licenses and contract rights with franchises, and the result is, that he arrives at what we deem a wrong

conclusion in respect to the present controversy. The contentions of appellee in this behalf are, that it derived from the ordinance of the city its franchises, or part of its franchises; that the city had no judicial authority to declare and enforce a forfeiture of its franchises; that a court of chancery had no jurisdiction so to do, and that a cause of forfeiture of a franchise cannot be taken advantage of or enforced against a corporation collaterally or incidentally, or in any other mode than by a direct proceeding for that purpose, at law, by *quo warranto* against the corporation.

Blackstone says (book 2, chap. 3, *37,) that a franchise is a royal privilege or branch of the king's prerogative, subsisting in the hands of a subject; that being derived from the crown it must arise from the king's grant, or held by prescription, which presupposes a grant. In *Chicago City Railway Co.* v. *People ex rel.* 73 Ill. 541, this court said that corporate franchises in the American States emanate from the government or the sovereign power, owe their existence to a grant, or, as at common law, to prescription, which presupposes a grant, and are invested in individuals or a body politic.

The proposition which is the foundation of appellee's claim was expressly decided, and decided adversely to such claim, in the case last cited. It was there held, that where a street railway company is incorporated under an act of the legislature, with power to construct, maintain and operate a railroad in a city, upon the consent of the city, and in such manner and upon such conditions as the city may impose, and the city, by ordinance, grants the privilege of constructing and operating the same upon a certain street, the grant by the city is a mere license, and not a franchise. To the same effect are the subsequent cases of *Board of Trade* v. *People ex rel.* 91 Ill. 80, *Chicago and Western Indiana Railroad Co.* v. *Dunbar*, 95 id. 571, *City of Quincy* v. *Bull*, 106 id. 337, and *Chicago Municipal Gas Light Co.* v. *Town of Lake*, 130 id. 42. And

in this latter case it was also held, that the privilege of the use of the streets of a city or town, when granted by ordinance, is not always a mere license, and revocable at pleasure ; that if the grant is for an adequate consideration, and is accepted by the grantee, then the ordinance ceases to be a mere license and becomes a valid and binding contract, and that the same result is reached where, prior to its revocation, the license is acted upon in some substantial manner, so that to revoke it would be inequitable and unjust.

Appellee places much reliance upon the decision of the Supreme Court of Wisconsin in *State ex rel.* v. *Madison Street Railway Co.* 72 Wis. 612, where it was held that a municipal ordinance granting to a street railway corporation a franchise to occupy and use public streets for the purposes of its railway, has the force and effect of a statute of the State, and that for a violation of the provisions of such ordinances an action could be maintained to vacate the charter or annul the existence of such corporation. The decision was based upon a statute of that State, and can not be regarded as authority here ; but had it been decided on common law grounds, there is nothing in the case that would justify us in overturning the settled law of this State, as announced in a long line of decisions.

Ordinance No. 185, passed December 21, 1885, was a contract, and one under which appellee had vested rights. But it contained conditions subsequent, which made it determinable under certain circumstances. It was provided in section 8 of the contract, that "upon the failure of said company to comply with any condition herein named, the said council shall have the power, which it hereby expressly reserves, to repeal the ordinance and revoke the consent hereby given ;" and in section 9, that in certain specified contingencies "the rights and privileges hereby granted shall at once cease and determine." It was in plain violation of these conditions subsequent

that appellee did not keep the streets in repair between the rails of its tracks, that it failed to operate the horse railroad regularly for numerous periods of at least thirty days each, and that it failed, for more than a year prior to the appointment of a receiver, to run a car over its road, or any portion of it, so as to pass a given point at least every fifteen minutes at regular intervals in the daytime, when such failures were not the results of accidents to its property or its route. These matters were all expressly named in the contract as conditions, and appellee agreed that if it failed to comply with them, or any or either of them, then that the rights and privileges granted it by the ordinance should at once cease and determine, and that the city should have the power to repeal the ordinance, and revoke the license and consent given for occupation and use of the streets for the purposes of the railway.

These failures on the part of appellee did not, of themselves, avoid the contract, but they put it in the power of the city to rescind it. It is entirely competent for parties to a contract to introduce into it a provision that if one of them fails to fulfill certain specified terms, the other shall be entitled to treat the agreement as at an end. There is a difference between this mode of discharging a contract and that by breach. When the parties have agreed that one of them shall have an option to dissolve the contract if certain of its terms are not observed, upon the non-fulfillment of the specified terms the party may exercise his option, and if he elects to treat the contract as at an end it will be discharged. But when a term of the contract is broken, and there is no agreement that the breach of that term shall operate as a discharge, it is always a question for the courts to determine whether or not the default is in a matter which is vital to the contract, for if it is not, the contract will not be discharged. (3 Am. & Eng. Ency. of Law, p. 893, and note 5; *Head* v. *Tattersall*, L. R. 7 Exch. 7) The

contract at bar was of the kind first mentioned above. It contained provisions which made it determinable under certain circumstances, at the election of the city. And how was the city to indicate its election to avoid the contract? Manifestly by passing an ordinance repealing the ordinance that constituted the contract, and revoking all the rights and privileges granted thereby, and by notifying appellee to remove its tracks, switches and turn-outs from the streets of the city. All this was done. The contract between appellee and appellant was thereupon at an end. Of course, section 3 of the repealing ordinance was void. The city had no authority, without the judgment of a court, to forfeit to its own use the tracks, switches and turn-outs of the railway company. (*Baldwin* v. *Smith*, 82 Ill. 162.) But there was no attempt to enforce it. The remaining sections are complete in themselves, and so distinct and separately enforceable that they may be enforced without regard to section 3. They, therefore, are not invalid. *Nelson* v. *People*, 33 Ill. 390; *Donnersberger* v. *Prendergast*, 128 id. 229.

The case of *Railroad Co.* v. *Leavenworth City*, 1 Dill. 393, is very like this. There an ordinance and contract, special in their terms, were construed to give the city a right to re-enter and take possession of the street and remove the railroad track, on the failure of the company to comply with the conditions of the ordinance granting to it the right of way. DILLON, J., in disposing of the case, said: "I refuse the injunction on the ground that the company is in default, and the city is only pursuing a remedy which is given to it by the contract of the parties."

The city, in the petition which it filed in the foreclosure suit, did not ask the court to forfeit the franchises of appellee, or even the license or contract for the right of way on its streets. This latter had already been abrogated by its own act. It merely stated the facts in regard to the ordinance, the defaults of the company in respect to the conditions therein, and the passage of the repeal-

ing ordinance, and asked leave of the court to remove the tracks, turn-outs, switches, etc., from the streets of the city. Since the property in question was under the jurisdiction and in the care and custody of the court of chancery, the petition was entirely proper and absolutely necessary. Nor did the court assume to decree a forfeiture of either the franchises of the railway company or of the license from or contract with the city. It merely found the facts, and granted the relief that the city was justly and equitably entitled to receive.

It is objected that the city did not, in its petition, make either appellee or any other person or persons party defendant. Whether or not this was essential, it is unnecessary now to decide. At all events, appellee filed an answer to the petition, and there was a replication to the answer, and the matter was heard upon the pleadings and proofs, and appellee cross-examined the witnesses of appellant, and introduced witnesses and other evidence in its own behalf. So the formal defect in the petition, if it was a defect, was waived, and appellee enjoyed all the rights and privileges of a defendant, and was not injured by the omission.

It is objected that the city attorney did not have any power or authority from the city council to file the petition on which a forfeiture was declared. No forfeiture was declared, and in the absence of anything to show the contrary it will be presumed that the city attorney was authorized to appear on behalf of the city.

It is objected that the court denied the motion to refer the original bill and the intervening petition to the master in chancery, to take and report evidence. There was no account to state, other than making a computation of the amount due on the bonds and mortgage, and it is not perceived that it was not within the judicial discretion of the chancellor to hear the witnesses himself, instead of having their testimony taken by the master.

It is urged that the court improperly denied the motion to empanel a jury to hear and determine all the questions of fact raised on the petition filed by the city. It does not appear that any issue was formed that gave appellee the right to demand a jury. Besides this, the motion was not made in apt time, but on the same day and immediately before the cause was heard by the chancellor, and while the numerous witnesses were in attendance for examination.

We find no error in the record made in the circuit court.

The judgment of the Appellate Court is reversed, and the order and decree of the circuit court are affirmed.

*Judgment reversed and decree affirmed.*

Mr. JUSTICE PHILLIPS took no part in the decision of this case in this court.