[No. 3831.]

THE PEOPLE EX REL. BURTON v. BATES.

1. ELECTIONS—REGISTRATION.
Session Laws 1894, page 6 (3 Mills' Ann. Stats. sec. 1692 *b*) providing for the registration of a certain class of voters in cities of first and second class by the board of county commissioners, does not extend to cities afterwards reaching that rank.    The act of 1894 repealed the act of 1891.

2. SAME.
Other provisions of the act and other authority than the board of county commissioners must be looked to for making permanent registration of the voters in cities that have since its passage, or may hereafter, come within the purview of the act.

*Appeal from the District Court of El Paso County.*

Mr. D. J. DAVIES and Mr. H. J. TELLER, for appellant.

Messrs. ADY & KINSLEY, for appellee.

PER CURIAM. During the present year Cripple Creek became a city of the second class, and, as such, is said to be within the purview of the permanent registration act of 1894. Relator was listed as a qualified elector of a precinct of that city by a canvasser appointed by the board of county commissioners to make the original permanent registration of electors in said city. The county clerk refused to enter such registration in the permanent registration books of his office, on the ground that the board had no authority for making the registration in question. Relator's application to the district court for a writ of mandamus to compel the clerk to place her name on the proper books was denied, and she thereupon brought her case here by appeal to review that judgment.

It may be that this court has not jurisdiction to entertain this appeal. If it has, it is because a franchise is involved within the meaning of that word as it is employed in our act governing appeals. Whether the right of a qualified elector to have his name placed upon the permanent registration books as a condition precedent to the right to vote at a public election, or the right to vote thereat, is a "franchise" in the sense that such word is used in the act relating to appeals, has not been, so far as our somewhat limited investigation has gone, expressly passed upon. But kindred rights, such as the right to a trade mark, the right to a public office, the right to membership in a private corporation, have been held not to be franchises, and the controversies concerning them not to involve franchises of the kind which the statute had in view. *People v. Londoner*, 15 Colo. 246; *Board of Trade v. The People*, 91 Ill. 80; *People ex rel. v. Holtz et al.*, 92 Ill. 426; *C. & W. I. R. R. Co. et al. v. Dunbar et al.*, 95 Ill. 571; *McGrath v. The People*, 100 Ill. 464; *Graham v. The People*, 104 Ill. 321; *Boiler Co. v. Tripod Boiler Co.*, 137

Ill. 231; *City of Bridgeport v. N. Y. & N. H. R. R. Co.*, 36 Conn. 255.

In some of these cases the right to vote is said, *arguendo,* to be of the same character as the one under consideration by the court, and which was held not to be a franchise. But as this jurisdictional question has been neither raised nor argued by counsel, and as we are admonished of the necessity for a speedy determination of this appeal, we have decided, for the purposes of this case, to assume jurisdiction and pass upon the merits of the controversy. We do so with the less reluctance because the conclusion which we have reached upon the merits, which requires an affirmance of the judgment, leads to the same result, so far as concerns the relator, as that which would follow were the appeal dismissed for want of jurisdiction. We mention this phase of the case to say that our determination, in this particular, must not be considered as conclusively settling the jurisdictional question; and had our conclusion upon the merits necessitated an award of the writ to relator, we should have taken ample time for considering whether the power to entertain this appeal is conferred upon this court.

Counsel for relator advance as an argument for the reversal of the judgment that this registration act is unconstitutional because, *inter alia,* it adds to the constitutional qualifications of electors. But if the county clerk has refused to perform any duty which he owes to the relator, it is because, and only because, the act which she now assails imposes that duty. Certainly the relator may not ask for the enforcement of a statute which she herself alleges to be invalid. For the reason given, and for the additional reason that it does not appear that a constitutional question has been decided against her, we do not find it necessary, in the determination of this case, to decide it.

The sole, legal proposition presented for our consideration, therefore, is whether the board, at the time in question, had the power, under the law, to make the permanent registration. The first act in this state providing for permanent

registration in the class of cities therein designated was passed in 1891. Session Laws, 1891, p. 172. It was repealed in 1894, and a new act passed in its stead. Session Laws, 1894, p. 68. The first act provided for a permanent registration in the designated cities of all persons who were then qualified electors. Under the law as it then stood, only men could be qualified electors, and their names were placed upon the permanent registration which was taken in accordance with the requirements of the act of 1891. In 1893 the elective franchise was conferred upon women, and provision was made by section 2 of the act of 1894, for a registration of " all female persons who at that time are qualified electors in all such election precincts." It is this section which relator claims confers upon the board the power to make a permanent registration in cities which may thereafter come within the class designated in section 1 as the municipalities to which the act is applicable.

But the registration which section 2 requires the board to make must be commenced within five days from the first day of March, 1894, and be completed within twenty days thereafter. This section, therefore, in so far as the power of the board is concerned, had spent its force and become inoperative for any purpose long before Cripple Creek came within the scope of the act, and long before the registration of the relator was made under the assumed authority of the board. Besides, this section limits the registration to *female electors* only. Both because the time is limited and the registration restricted to women, it is clear that the legislature intended thereby merely to give to the board of commissioners the power to make a registration of a class of voters not theretofore registered, so as to supplement that of the male voters made under the act of 1891. A registration of all electors, both male and female, and for the first time, in cities which should come within the specified class, after the passage of the act of 1894, certainly could not be made under the act of 1891, for the former act repealed the latter. Neither could there be made under the act of 1894, by or under the direc-

tion of the board, a permanent registration of all electors, both male and female, because the section giving power to the board to make a permanent registration was restricted to a certain class of voters, viz: female electors.

Nor was there an intention by this section to confer upon the board of commissioners the power to make a permanent registration of any electors whenever thereafter a city should come within the designated class, irrespective of the time of its reaching that rank; because the section itself required such registration, by or under the direction of the board, to be made within a specified time. For both of these reasons, which a mere examination of this section discloses, the registration attempted to be made by the board in the present instance was unauthorized, because of the original lack of authority therefor, and also because the time for taking any registration at all, of any character, under this section, had long since expired.

We must, therefore, look to other provisions of the act to find authority for making a permanent registration in cities like Cripple Creek, and others that have, or may hereafter, come within its purview since its passage. While we think that such authority is to be found, the only question which we are called upon to decide is whether the board of commissioners, and not some other body or person, has such power. That the board has not, seems clear.

It follows that the judgment of the district court should be affirmed, and it is so ordered, with costs against the relator.

*Affirmed.*

Chief Justice Hayt not sitting.