## JOHN MARTENS

*v.*

.THE PEOPLE *ex rel.* Searle, State's Attorney.

*Opinion filed June 21, 1900.*

1. QUO WARRANTO—*granting of leave to file information rests in sound discretion of the court.* The granting of leave to file an information in the nature of *quo warranto* rests in the sound discretion of the court, to be exercised in accordance with the principles of law.

2. SAME—*validity of saloon license may be tested by quo warranto.* The validity of a license to keep a saloon may be tested by an information in the nature of *quo warranto,* whether such license is granted in alleged violation of a State law or a city ordinance.

3. DRAM-SHOPS—*ordinance requiring written petition of property owners in block is valid.* A general ordinance requiring an application for saloon license to be accompanied by a petition of two-thirds of the freeholders in a block where the saloon is to be kept, if no saloon then exists in such block, is valid, and a license issued without the petition in such case is void.

4. APPEALS AND ERRORS—*when amount of fine will not be disturbed on appeal.* The amount of the fine imposed for violating a license ordinance will not be disturbed on appeal, where the record shows ·that evidence was heard on that subject but the evidence is not preserved and presented by a bill of exceptions.

5. SAME—*a saloon license is not a "franchise."* The Appellate Court has jurisdiction of an appeal in a case involving the validity of a license to keep a dram-shop, since such license is not a "franchise," within the meaning of the statute authorizing direct appeal to the Supreme Court where the validity of a franchise is involved.

*Martens* v. *People,* 85 Ill. App. 66, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Rock Island county; the Hon. W. H. GEST, Judge, presiding.

JOSEPH L. HAAS, for appellant.

CHARLES J. SEARLE, State's Attorney, (S. W. ODELL, of counsel,) for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court;

This is an appeal from the Appellate Court for the Second District, affirming a judgment of the circuit court of Rock Island county, against appellant, in a *quo warranto* proceeding begun in that court by the State's attorney of Rock Island county. The motion for leave to file the information stated that appellant claimed and was attempting to exercise the right to keep a dram-shop under a license issued to him by the mayor of the city of Moline on November 4, 1898, contrary to the ordinances of said city and the statute in such case made and provided; that no petition, as required by the ordinances of the city, accompanied the application for license, and that no sufficient bond was filed by appellant as provided by law. The motion was supported by affidavits. Leave was granted and the information filed.

It appears from the allegations of the information that at the time the license was issued to appellant there was an ordinance in force in the city to the effect that in any block where no saloon then existed no license should be issued to keep a saloon there without a petition signed by two-thirds of the freeholders in such block praying that such license be issued; that when the license in question was issued no saloon then existed in block No. 2 in South Moline, where the saloon was attempted to be licensed, and that no saloon had ever existed or been opened in said block; that no application in writing was made to the mayor as provided by the ordinances of said city, nor was any petition presented, signed by two-thirds of the freeholders in said block No. 2, praying for the issuing of such license, as provided by the ordinances; also, that the bond filed by appellant upon the issuing of

the license was not in compliance with the ordinance of the city, in that it was not signed by two good and sufficient sureties who were at that date freeholders in Rock Island county. Appellant entered a motion to vacate the leave to file the information, supported by affidavits, but the motion was denied. A general demurrer was then filed to the information and overruled. Appellant electing to stand by his demurrer, the court entered a judgment of ouster against him and imposed a fine of $250.

It is first contended that the circuit court should have denied the leave to file the information, for the reason that it was presented, not to subserve the public interests, but to gratify personal spite and prejudice and for private and personal ends. The point is without substantial merit. As we said in *People* v. *North Chicago Railway Co.* 88 Ill. 537, "the granting of leave to file an information in the nature of a *quo warranto* is in the sound discretion of the court or judge to which the application is made. Leave on the one hand is not granted as a matter of right upon the part of the relator, and on the other hand a court is not at liberty to arbitrarily refuse, but must exercise a sound discretion in accordance with principles of law,"—citing *People* v. *Waite*, 70 Ill. 25, and *People* v. *Callaghan*, 83 id. 128. From an examination of the affidavits filed in the case, both by relators and the respondent, we are satisfied the record fails to show any abuse of the discretion reposed in the court to permit the information to be filed.

The contention that the validity of a saloon license cannot be tested by an information in the nature of a *quo warranto* is also without merit, this court, in the case of *Swarth* v. *People*, 109 Ill. 621, having held it to be a proper remedy under section 1 of chapter 112 of Hurd's Statutes of 1897. It is urged on behalf of appellant that the rule announced in that case does not apply here, because in this case the charge is a violation of a city ordinance, while in the case cited the violation was of a State law.

The statute makes no such distinction, its language being that the petition may be filed when any person "shall hold or claim to hold or exercise any privilege, exemption or license, which has been improperly or without warrant of law issued or granted by any officer, board, commissioner, court, or other person or persons authorized or empowered by law to grant or issue such privilege, exemption or license," etc. This case comes clearly within the language of the statute, and no good reason is pointed out why the information should not lie.

It is said the city ordinance requiring the consent of a majority of the freeholders of a block before the license can be issued is void, because unreasonable. The language of the ordinance is: "If the place so designated is in a block where no saloon then exists, then there shall accompany such application a petition of two-thirds of the freeholders in such block, praying that such license be issued." The question here is similar in principle to the one raised in *City of Chicago* v. *Stratton*, 162 Ill. 494. The ordinance in that case provided that it should not be lawful to locate in any block in which two-thirds of the buildings were devoted to exclusive residence purposes a livery stable, "unless the owners of a majority of the lots in such block fronting or abutting on the street consent, in writing, to the location or construction of such livery stable." In commenting upon this provision of the ordinance we there said (p. 503): "In determining the question of the location of a livery stable the common council may properly consult the wishes and ascertain the needs of the residents of the block where the stable is to be kept, and to that end make their written consent the basis of the action of the commissioner of buildings in issuing the permit. In matters of purely local concern the parties immediately interested may fairly be supposed to be more competent to judge of their needs than any central authority,"—citing Cooley's Const. Lim. (6th ed.) p. 138.

It is also said this ordinance attempts to discriminate between different blocks, and between different parts and portions of the city, and between different persons possessing the same property interests, and is therefore void. The language of the ordinance admits of no such construction.   It is uniform in its operation.

The ordinance being held valid, it follows that the license issued to appellant is void, being conceded it was issued contrary to the requirements of the ordinance. This view renders it unnecessary to discuss the question as to the sufficiency of the bond.

As to the amount of fine imposed, the action of the trial court will not be disturbed.   The record discloses the fact that evidence was heard upon that question, but it has not been preserved and presented in a bill of exceptions, and we are not in a position to say it failed to justify the action of the court.

The position of appellee, by cross-error, that the appeal was improperly taken in the first instance to the Appellate Court because a franchise is involved, is untenable.   A franchise is defined to be "a special privilege conferred by the government upon an individual or corporation which does not belong to the citizens of the country generally, by common right." (14 Am. & Eng. Ency. of Law,—2d ed.—p. 4.)   The term "franchise," as used in the statute providing that certain cases shall be appealable to this court, is used in its strict legal sense. A license to keep a saloon confers no special right or privilege upon the holder, but is merely one of the means adopted by the legislature for the regulation of the sale of intoxicating liquors, and such a license is not, therefore, within the legal definition of a franchise.   *Chicago and Western Indiana Railroad Co.* v. *Dunbar*, 95 Ill. 571.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*