## City of Carbondale v. James W. Wade.

1.  INTOXICATING LIQUORS—*City May Revoke License Before Expiration of Its Term Without Any Violation of Its Conditions by Its Holder.*—A city authorized to prohibit, or to license and regulate the sale of intoxicating liquors, may revoke, under the police power of the state, a license issued for a specific term, before the expiration of that term, and without any violation of its conditions by its holder.

2.  SAME—*License to Sell is Not a Franchise.*—A license to sell intoxicating liquors. although legally issued, is not a franchise.

3.  SAME—*License to Sell Creates No Contract.*—A license authorizing a person to retail spirituous and intoxicating liquors, does not create any contract between him and the government.

4.  MUNICIPAL CORPORATIONS—*Can Not Divest Themselves of Their Police Power.*—A city can not, by contract, divest itself of the power to enforce proper police regulations.

5.  SAME—*Council May Prescribe Rules for Its Procedure.*—The city council has a right to prescribe by ordinance, rules of procedure in the exercise of its power.

6.  SAME—*Must Follow Rules of Procedure When Enacted.*—When municipal corporations have, by ordinance, provided for the exercise of general powers granted them by the legislature, it follows as a logical sequence that when they have so provided, they must act in the manner prescribed.

7.  SAME—*Power Given to Council Can Not be Delegated.*—Powers given by the general incorporation act for cities and villages to their councils can not be delegated to officers or individuals.

8.  WORDS AND PHRASES—*License Defined.*—A license is an authority to do something which, without authority, is prohibited.

9.  LICENSES—*Mode of Revocation Prescribed by Council Must Be Observed.*—Where a city council has prescribed by ordinance how a license should be revoked, so long as the ordinance is in effect it is necessary to proceed in the manner prescribed by it.

**Debt,** to recover a penalty for violating a city ordinance. Appeal from the Circuit Court of Jackson County; the Hon. ALONZO K. VICKERS, Judge presiding. Heard in this court at the August term, 1902. Affirmed in part and reversed in part. Opinion filed March 2, 1903.

Suit commenced before a justice by the city of Carbondale, to recover a fine from appellee for violating an ordinance prohibiting the sale of intoxicating liquors in said city. The city made default before the justice, but appealed the case to the Circuit Court. At the close of the evidence in the Circuit Court, the judge instructed the jury to find a verdict for defendant, and judgment was rendered for appellee, from which plaintiff appealed.

The following stipulation was agreed upon:

"It is hereby stipulated by and between the parties as follows:

It is agreed that the city of Carbondale is acting under the general incorporation law of the state, entitled 'Cities and Villages;' that it has a mayor and eight aldermen who compose the city council; that there was in force an ordinance known as Chap. 14, providing for licensing dramshops; that the defendant took out a license to keep a dramshop for the year ending April 29, 1902; that the defendant paid on said license $250 for the first quarter, $250 for the second quarter, and $500 at one payment for the last two quarters; that after the issuance of this license, and after the payment of the $1,000, as above stated, that the city council passed an ordinance repealing Chap. 14 and all the sections thereof; that this repealing ordinance was regularly passed and in force November 1, 1901; that subsequent to the date when this repealing ordinance went into effect, the defendant made one sale of intoxicating liquor within the limits of the city, in less quantity than one gallon, to be drunk on the premises where sold. It is also agreed that certain resolutions were passed by the city council of Carbondale upon the several dates shown on said resolutions, and it is further admitted that no attempt has been made to revoke the license of defendant in accordance with the provisions of chapter 15 of the revised ordinances of the city of Carbondale, which ordinance is considered in evidence and which is agreed to as a valid ordinance then, and still in force. It is further stipulated that on the 24th of December, 1901, there was in force in the city of Carbondale a valid ordinance prohibiting the sale of intoxicat-

ing liquors in less quantities than one gallon, without a legal license to do so, with a penalty for the violation thereof, of a fine of not less than $20, nor more than $200, for each offense. It is hereby stipulated that in case the defendant is found guilty, that there shall be a fine of $20 and costs of suit. The making of this stipulation shall not preclude either party from introducing any competent evidence that he may desire upon any question involved in the case, not covered by the stipulation."

That part of Chap. 15 of the ordinance referred to in the above stipulation which provides how a license may be revoked, is as follows:

"Section 6. All licenses granted by the authority of the city shall be subject to the power of the mayor to revoke them for such cause as may by law or ordinance be declared a forfeiture thereof. The power of revocation shall be as follows: · The mayor shall deliver to the city marshal an order, in writing, signed by him, declaring the license forfeited and revoked, and stating the reason therefor, and requesting the holder of such license to deliver the same to the city marshal, which order the marshal shall proceed to serve upon the party to whom it is directed, by reading and delivering a copy thereof to said party, and demanding a surrender of said license, and shall make return thereof to the mayor, with an indorsement on the back of said order, stating the manner and time of serving the same, and shall also return the license to the mayor, if the same be surrendered to him. The mayor shall report to the city council, at its next regular meeting, the fact of such revocation, with the order therefor, and the return of the city marshal thereon, and the license, if in his custody. If the city council approves such revocation, the city clerk shall indorse their approval on said order and file the same in his office; if the city council does not indorse such revocation, it shall be held of no effect, and the license, if it shall have been served (surrendered), by the holder, shall be returned to him and continue in force for a length of time thereafter, equal to the uncompleted time at the time of the revocation. In no case shall the holder be entitled to the return of any portion of the fees paid for the granting of such license.'

Section 7. In case an order of revocation of license be issued and served, as provided in Sec. 6 of this chapter, such license shall be deemed to be at an end and void and of no effect from the time such order is served, whether

such license be delivered to the city marshal or not, and if the holder shall proceed to act thereafter under such license, and contrary to the order of revocation, he shall on conviction be fined as though such license had never been issued."

A. L. Spiller and W. P. Lightfoot, attorneys for appellant.

A city has the right to revoke all dram-shop licenses at any time; the matter is wholly within the police power, and no cause whatever need be assigned for such revocation, and the repeal of the license ordinance, of itself, revokes all outstanding licenses.   Black on Intoxicating Liquors, pages 186–9; Tiedeman's Limitations of Police Power, page 287; Schwuchow v. City of Chicago, 68 Ill. 451; Columbus City v. Cutcomb, 61 Iowa, 672.

F. M. Youngblood and Andrew S. Caldwell, attorneys for appellee.

While the state may amend the charters of cities and villages, yet municipal corporations, such as cities and villages, do not possess the power to revoke a license by a repeal of the ordinance under which such license has been issued.   The license can only be revoked by the method prescribed by ordinance.   The Pres. and Board of Trustees of the Town of Mt. Carmel v. The County of Wabash, 50 Ill. 69; Martel v. The City of East St. Louis, 94 Ill. 67.

Mr. Justice Worthington delivered the opinion of the court.

From the facts stipulated and evidence introduced, this summary may be stated:

Appellant issued a license to appellee for the sum of $1,000 to sell intoxicating liquors for the year ending April 29, 1902.   He paid $250 for the first quarter, $250 for the second quarter, and $500 at one time for the last two quarters.   The city council, on October 18, 1901, repealed the ordinance authorizing the issuing of licenses, and at the same meeting of the council, the following resolution was passed:

" Whereas, the city council of the city of Carbondale, Illinois, did on the 18th day of October, 1901, by the passage of ordinance No. 268, the same to take effect November 1, 1901, repeal the dram-shop ordinance; and whereas, a license extending to May 1, 1902, had been granted to M. R. Fakes, Wm. Oldenhage and J. W. Wade, in pursuance to and by authority of said dram-shop ordinance prior to its repeal, and whereas, the above mentioned parties have paid into the city treasury of said city the fees up to May 1, 1902, required by said ordinance for and up to said time, and whereas, the said licenses and each of them, have become by the repeal of the ordinance, null and void, now therefore, be it resolved, that the said licenses and each of them are hereby declared to be revoked, recalled and annulled, and that the city treasurer be and he is hereby instructed to return to each of said parties, through the city clerk, the unearned part or portion of such license money for the period of time from November 1, 1901, to May 1, 1902."

About eight o'clock on the evening of November 27th, the mayor, with the city marshal and others, called at the house of appellee, tendering him $500 as a return of the unearned license money.

It is admitted that appellee made one sale of intoxicating liquor in December, 1901, and that if liable for such sale, a fine of $20 should be adjudged against him.

From this statement it is seen that two issues of law are presented for decision.

First, had the city authority to cancel appellee's license without fault on his part, before its term expired ?

Second, if the city had authority to revoke appellee's license, was it limited in the exercise of such authority to the mode and manner of revocation provided by ordinance No. 15 ?

As to the first issue, the weight of authority is, that a city authorized to prohibit, or to license and regulate the sale of intoxicating liquors, may revoke a license issued for a specific term, before the expiration of that term, without any violations of its conditions by its holder.

A license to sell intoxicating liquors, although legally issued, is not a franchise. People ex rel. Streator v. Matth-

ews, 53 Ill. App. 305; Martens v. People, 85 Ill. App. 66; same case affirmed, 186 Ill. 314.

State v. Holmes, 38 N. H. 225, is a case where the selectmen of the town issued a license to Holmes for the sale of liquors, but the legislature, before the term of the license expired, repealed the statute authorizing the issuance of such licenses. Holmes was prosecuted for selling liquor and pleaded his license, but the court held it was no defense. In this case it is said:

"License is a term of the law having a definite, legal signification. It is an essential ingredient of a legal license, that it confers no right or estate or vested interest, but is at all times revocable at the pleasure of the party that grants it. Nor has the word any popular use which differs from the legal definition. In both the legal and popular sense, the term license implies no right or estate conveyed, or ceded, no binding contract between parties, but mere leave to be enjoyed as matter of indulgence at the will of the party who gives the license."

"A license * * * authorizing a person to retail spirituous and intoxicating liquors, does not create any contract between him and the government." Calder v. Kurby, 5 Gray, 597.

This case holds that such a license is revocable under the police power of the state. In these cases, the money paid by the licensee was merely nominal. But this does not affect the principle affirmed.

Other cases might be cited which declare the right to revoke a license for the sale of liquors, basing the right upon the police powers of cities. Columbus City v. Cutcomb, 61 Ia. 672; Met. Board of Excise v. Barrie, 34 N. Y. 657; Commonwealth v. Brennan, 103 Mass. 70; Commonwealth v. Kinsley, 133 Mass. 578; Pleuler v. State, 11 Neb. 575; State v. Mullenhoff, 74 Ia. 271; State v. Fairfield, 37 Me. 517; Fell v. State, 42 Md. 71; State of Minn. v. Cooke, 24 Minn. 247; Voeght v. Excise Com. of Newark (N. J.), 37 L. R. A. 292.

Distinguishing between contracts entered into for pure property rights, and others not of that character, it is said in 10 Howard, 416:

" The contracts designed to be protected by the fourth article of the tenth section of the Constitution, are contracts by which perfect rights of property are vested. They are clearly distinguishable from measures or engagements adopted or undertaken for the body politic or state governments, for the benefit of all, and from the necessity of the case, and according to the universal understanding, to be varied and determined as the public good shall require."

It is further said that these powers of general legislation on public subjects are " functions which governments can not be presumed to have surrendered, if they can under any circumstances be justified in surrendering them."

We have been cited to no Illinois decision directly in point.

Schwuchow v. City of Chicago, 68 Ill. 444, was a case where the ordinance and the license issued under it, stated causes for which the license might be revoked. But in the discussion of this case a proposition is stated which is much wider in its application. It is as follows :

" Much stress is placed on the supposed vested right to the privileges conferred by the license. If, as we have seen, the control of the sale of liquors is a police regulation, then no one can obtain such a vested right in it as that it may not be resumed when the interests of society require it. In the cases of the Galena and Chicago U. R. R. v. Dill, 22 Ill. 264, Ohio & Miss. R: R. v. McClelland, 25 Ill. 140, and Galena & Chicago U. R. R. v. Appleby, 28 Ill. 283, this question was discussed, and it was intimated that the legislature could not so far divest itself of the right to exercise the police power, that it could not resume it, whether delegated to individuals or to corporations. And it was said that we could never intend that the legislature designed to do, unless it was by clear, explicit and unmistakable language. So, here, we can not infer that the legislature or the city intended to unconditionally part with the powers for the period for which the license was granted. This being true, appellant took this license subject to be controlled by the police power. We can never hold that a person can acquire an absolute, vested right to such a license for any definite period beyond the control of the police power of the state."

The propositions that a city can not by contract divest

itself of the power to enforce proper police regulations, rests upon the solid ground of good sense, and the necessity of good government.

It is well established that the right of a city to prohibit, regulate or license the sale of intoxicating liquors, is based upon the police powers delegated to it by the legislature. While the courts of some states have held that a license, without fault of the licensee, could not be revoked during the term for which it was issued, we think that upon principle and authority, such holding is not law. But when revoked without fault of licensee, common justice requires that a proportionate part of the money received by the city should be returned. Martel v. City of East St. Louis, 94 Ill. 68.

In the case at bar, the evidence shows the tender of the unearned license fee for $500, after the passage of the resolution of revocation. No objection was made to the time or manner of tender, and the question of its acceptance was by appellee postponed for further consideration. So far, then, as a tender is involved, it was sufficient in law.

The second question to be considered is, was there a valid revocation of the license?

The license issued is not in evidence. We are therefore not advised of any conditions of revocation contained in it. This being so, the conditions of revocation must be found in the ordinance in force when the license was issued and when the resolution revoking it was passed by the council. This ordinance is in substance as follows:

It provides that the license shall be subject to the power of the mayor to revoke, for such cause as may by law or ordinance be declared a forfeiture thereof. The power of revocation shall be as follows: The mayor shall deliver to the city marshal a written order, signed by him, declaring the license forfeited and revoked, and stating the reason therefor, and requesting the holder of the license to deliver it to the marshal. This order the marshal shall serve by reading and delivering a copy to the licensee, and demanding a surrender of the license, and shall make return

thereof to the mayor by indorsement on the back of the order, stating the manner and time of service. The mayor shall then report the revocation to the next regular meeting of the city council. If the council approves the revocation, the city clerk shall indorse their approval on the said order and file the same in his office. If the council does not approve the revocation, it shall have no effect, and the license, if surrendered, shall be returned to the licensee.

It is stipulated "that no attempt has been made to revoke the license of defendant in accordance with the provisions of Chap. 15 of the revised ordinances, which ordinance is in evidence and is agreed to be a valid ordinance then and still in force."

The city council has a right to prescribe by ordinance, rules of procedure in the exercise of its power. Am. & Eng. Ency., 2d Ed., Vol. 20, p. 1213; Wheeler v. Commonwealth, 98 Ky. 59; Mann v. City of Le Mars, 109 Ia. 251.

In Zanone v. Mound City, 103 Ill. 552, it is said, speaking of municipal corporations : " Their government and administrative powers. other than those conferred by statutory or constitutional enactment, which are self-executing, can only be exercised by appropriate ordinances." It is further said : " So long as the law recognizes the business of keeping a dram-shop as a legitimate business, that business must be dealt with according to law."

The ordinance of a city, prescribing how a license may be revoked, is a law of that city controlling its action.

People ex rel. Besse v. Village of Crotty, 93 Ill. 180, holds that the grant of power conferred upon a village to license, can not be exercised without an ordinance putting this power in operation by appropriate legislation.

If municipal corporations must, by ordinance, provide for the exercise of general powers granted them by the legislature, it follows as a logical sequence that when they have so provided they must act in the manner prescribed.

. " Agents, officers and committees of a city must act under the scope of the power and in the manner prescribed by it." Am. & Eng. Ency., 2d Ed., Vol. 20, p. 1217.

City of Carbondale v. Wade.

When appellee accepted his license, he did so with the implied assent that it might be revoked. But this implied assent was, that it might be revoked in the manner provided by the ordinance then in force.

"A license is an authority to do something which, without authority, is prohibited." Wilkie v. City of Chicago, 188 Ill. 453.

Appellee acquired no property or vested right from the city, but he did acquire a permit from the city for which he paid $1,000 to sell intoxicating liquors for one year. He accepted that permit with the implied understanding that before it could be revoked, a written notice, stating the reason of its revocation, signed by the mayor, would be served upon him by the city marshal, by reading and delivering a copy of it to him.

He paid his money upon this further condition, that if notice was duly served and his license revoked by the mayor, that this action of the mayor was not final, unless it was affirmed by the city council at its next regular meeting. This appears from the ordinance which reads as follows:

"If the city approves such revocation, the city clerk shall indorse their approval on said order and file the same in his office; if the city council does not approve such revocation, it shall be held of no effect."

If the revocation was not so approved, the license was to be returned to the holder.

While it is not so expressed in the ordinance, it is a fair inference that the reason of giving notice was, that the licensee might appear before the council to show cause why the revocation should not be enforced. It is clear that no power of revocation was given to the mayor except so far as it should be exercised in the manner prescribed by ordinance. He had no more arbitrary discretion by virtue of his office to revoke a license, than he had to grant one; nor was it in the power of the city council to grant him arbitrary discretion to do either. It is said in Robinson v. Mener, 68 Mich. 549, that "No man's rights can be submitted

under a constitutional government to the discretion of anybody."

In Dietz v. City of Neenah, 91 Wis. 422, 428, it is said:

"Due process of law is required in every proceeding by which a citizen may be deprived of life, liberty or property, whether the proceeding be judicial, administrative or executory. In general, it requires an orderly proceeding adapted to the nature of the case, in which the citizen has an opportunity to be heard and to defend, enforce, or protect his rights."

It is true that a license is not property in the strict sense of that term, but it confers valuable rights for which money is paid.

In Wiggins v. City of Chicago, 68 Ill. 378, cited by appellant upon the objection that the revocation was a judicial act and could not be exercised by the mayor, the court overruled the objection upon the ground that the license itself stated that it might be revoked by the mayor.

The power to prohibit or license the sale of liquors is given by the general incorporation act for cities and villages to their councils, and not to their mayors. Repeated decisions in this state hold that powers so given can not be delegated to officers or individuals. City of East St. Louis v. Wehrung, 50 Ill. 28; Swarth v. People, 109 Ill. 621.

In the case at bar the city council did not attempt by ordinance to give the mayor absolute power to revoke a license, but only power to revoke upon notice served, until the council should affirm or disaffirm his action.

From these considerations, and it being admitted by appellant that no attempt was made to revoke the license in accordance with the provisions of chapter 15 of the revised ordinances, we conclude that, the city council having prescribed by ordinance how a license should be revoked, so long as the ordinance was in effect, it was necessary to proceed in the manner prescribed by it; that, no notice being served upon appellee, as required by ordinance, the action of the city council in the resolution revoking appellee's license was without jurisdiction and invalid; that the mayor not having complied with the requirements of the

ordinance precedent to a revocation, and having no power by virtue of his office to do so, his attempted revocation is invalid.

There was, then, no error in instructing the jury to find for defendant.

The judgment of the Circuit Court is therefore affirmed, except so far as judgment for costs was rendered against the city of Carbondale. This part of said judgment, being unauthorized, is reversed.