THE STATE OF IOWA, Upon the Relation of ROBERT FULLERTON AND OTHERS, Appellees. v. THE DES MOINES CITY RAILWAY AND THE CITY OF DES MOINES, Appellants.

SAME PLAINTIFF, Appellee, v. THE INTER URBAN RAILWAY COMPANY AND THE CITY OF DES MOINES, Appellants.

**Municipal corporations:** FRANCHISE: USURPATION OF RIGHTS: ACTION IN NAME OF STATE. The rights granted to a corporation to use the streets of a city for street railway purposes, whether so granted by the State directly or indirectly through the municipality, are to be regarded as franchises; and a civil action by ordinary proceedings may be brought in the name of the State to test the abuse or usurpation of such rights.

**Same:** EXPIRATION OF FRANCHISE. Upon the expiration of a franchise which has not been renewed or extended a continued exercise of franchise rights is without warrant of law.

**Proceedings in nature of quo warranto:** WHO MAY INSTITUTE: INTEREST OF PRIVATE PROSECUTOR. Although a prosecuting attorney may have declined to institute an action in the name of the State for the purpose of testing the rights of a corporation under its franchise, and a private relator has obtained leave and commenced suit as provided by statute, still the county attorney may subsequently appear, and upon the filing of proper pleading and service of notice, prosecute the action; and the question of whether the private prosecutor had such interest in the matters complained of as to entitle him to bring the action is immaterial.

**Same:** PARTIES PLAINTIFF. The paramount purpose of the proceeding under the statute, in the nature of quo warranto, to test the right of a corporation to exercise the privileges contained in its franchise is the protection of public interests, whether invoked by a public or private prosecutor, and the

protection of private interests which may be involved is only incidental; and it is immaterial whether the proceeding be styled in the name of the State alone, or in the name of the State on relation of a designated officer or private citizen.

**Same:** RIGHT OF PROPERTY OWNERS TO SUE.  Citizens owning property abutting upon a street occupied ,by a corporation for street railway purposes, have such an interest in the street as entitles them to bring an action under the statute to test the right of the corporation to exercise the privileges granted in its charter.

**Same:** LEAVE TO SUE:  DISCRETION.  Permission to a private relator to bring an action under the statute in the nature of quo warranto is a matter of discretion with the court, and a ruling granting the right will not be reviewed on a motion to set aside or dismiss.

**Same:** LEAVE TO SUE:  NOTICE OF APPLICATION:  CONSTITUTIONAL LAW. Notice of an application for leave to a private relator to institute a proceeding under the statute in the nature of quo warranto is not essential, and the statute is not unconstitutional because failing to require such notice.

**Same:** PARTIES:  JOINDER.  Where private relators duly authorized have instituted a proceeding under the statute in the nature of quo warranto, the subsequent appearance of the county attorney and his participation in its prosecution will not afford ground for the compulsory dismissal of the relators.

**Appeal:** INTERLOCUTORY ORDERS.  It is not the policy of ·the law to permit an appeal from every interlocutory ruling of the trial court, for ordinarily every substantial right can be protected by preserving a proper record and presenting the questions thus saved upon appeal from the final judgment.

*Appeal from Polk District Court.*— HONS. JAMES A. HOWE, and HUGH BRENNAN, Judges.

TUESDAY, NOVEMBER 20, 1906.

REHEARING DENIED THURSDAY, OCTOBER 24, 1907.

THE above-entitled actions at law are brought to test the corporate right of the defendants to maintain and operate lines of railway upon the streets of the city of Des Moines. The cases are so similarly related, and depend so

nearly upon similar states of fact that they can be con-. veniently disposed of in a single opinion.— *Affirmed* in part, and *reversed* in part.

*N. T. Guernsey, Read & Read,* and *Carr, Hewitt, Parker & Wright,* for appellants.

*Wm. H. Bremner, M. H. Cohen,* and *Wm. H. McLaughlin,* for appellant city of Des Moines.

*Jesse A. Miller,* County Attorney, *William H. Baily,* and *Thos. A. Cheshire,* for appellees.

WEAVER, J.— On September 4, 1905, the relators herein presented to Jesse A. Miller, then county attorney of Polk county, Iowa, a written notice alleging that the Des Moines City Railway Company, a corporation organized under the laws of this State, was wrongfully and in excess of its lawful power and authority assuming the right to construct, maintain, and operate upon the public streets of the city of Des Moines, a system of street railways without having been granted any franchise or privilege so to do, and was thereby wrongfully obstructing and incumbering the streets of said city with its tracks, poles, wires, and cars. Said notice further alleged that on December. 10, 1866, said city by ordinance granted to the Des Moines Street Railway Company, also a corporation organized under the laws of this State, an exclusive franchise for the term of thirty years to construct and operate a system of street railways upon the streets of Des Moines, and that on March 8, 1890, said ordinance was so amended as to permit the use of electricity as a motive power in the operation of said system, after which time the grantee of said franchise attempted to transfer or assign the same to the Des Moines City Street Railway Company, but that such assignment or transfer was never consented to, or authorized by said city,

and was and is inoperative and void. Said notice further alleged that notwithstanding the invalid character of said pretended transfer, and notwithstanding the further fact that whatever right or franchise had been granted by the original ordinance of 1866 and its amendments has long since expired and ceased to be of any force or effect, said last named company, pretending to base its claims thereon, wrongfully continues to enter upon and subject the streets of the city to its occupation and use as aforesaid. Said notice also called attention to other city ordinances, the details of which we will not stop to set out, under which the railway company seeks to justify its continued occupation of the streets, but these ordinances it is charged have no legal force or effect to create such a franchise in said company or to extend or renew the franchise originally granted by the ordinance of 1866. It is further alleged that said company has constructed and is operating its railway in many streets in violation of the ordinances under which it claims its alleged franchise, and is thereby acting in excess and in violation of its lawful rights and powers. Said notice concludes with the statement that the relators are citizens and taxpayers in said city and owners of real property abutting on streets so wrongfully occupied and used by said railway company, and they request the said county attorney to bring and prosecute an action under chapter 9 of title 21 of the Code to oust and exclude said railway company from the franchises and privileges by it unlawfully usurped and exercised. The county attorney declined to comply with the request of the relators and indorsed his refusal in writing upon the notice served on him. Thereupon the relators applied to one of the judges of the district court of Polk county for leave to bring an action to test the right by which said corporation assumed to exercise said franchise, which application was granted, and an order entered by which the relators were authorized to institute such proceedings and prosecute the same to final judgment.

The petition in the action thus begun repeats in substance the matters stated in the notice to the county attorney, and need not again be rehearsed. It is also alleged that the city of Des Moines has failed to take proper action for the protection of the public interests affected by the matters complained of, and is therefore joined as a party defendant. Original notice was served on September 6, 1905, and on September 19, 1905, defendants entered appearance to the action. On September 23d they asked and were given until October 17th following to plead. On the last day named the defendant railway company filed a motion to set aside the order granting the relators leave to bring the action, alleging as grounds therefor: (1) The order was improvidently granted: (2) It was granted without notice to defendants. (3) The relators have no interest in the matters alleged entitling them to bring this action. (4) No action is shown to have been taken by the city to terminate the company's right in the streets. (5) The controversy involves no question of franchise or corporate power, but the determination of the construction of a contract between the city and railway company. (6) The action brought is not the action authorized by the order granting leave to sue. (7) The statements upon which the order was granted are inaccurate and misleading. (8) The State has no interest in the controversy revealed by the application. (9) That the provision of the Code authorizing the granting of such orders without notice violates the fourteenth amendment to the Constitution of the United States. (10) The alleged right of action is barred by the statute of limitations; and (11) The relators and the public are barred by their laches and their acquiescence in the acts and claims of the railway company.

This motion plaintiffs moved to strike from the files for reasons not material to now state. While these motions were pending and undecided, the county attorney appeared in the proceeding by filing what he denominated

an " amendment to the petition," which pleading is prefaced with the statement that said county attorney " enters his appearance herein as relator and as attorney for the State of Iowa, plaintiff, and elects to bring and prosecute on behalf of the State of Iowa this action." This amendment adopts the allegations made in the petition filed by the relators first named, and alleges that the railway company is maintaining and operating its system in the city of Des Moines without any franchise, right, or authority. To this amendment is also attached certain interrogatories to be answered by the defendant. On December 12th an amended and substituted petition was filed by the county attorney reasserting the various matters alleged in the prior petition of the relators and amendments thereto and asking judgment that defendant company has no franchise to occupy or use the streets of the city for its railway. Of this filing, original notice was duly served upon the defendants. On December 16, 1905, the court overruled the plaintiff's motion to strike, and sustained the defendants' motion to vacate and set aside the order, granting leave to the relators to bring and prosecute the action, and dismissed said action in so far as said private relators were concerned.

At the time of the filing of the substitued petition aforesaid the plaintiff by the county attorney filed a motion asking an order upon the defendants to plead thereto, and to answer the interrogatories attached. On December 18, 1905, the last-mentioned motion was sustained, and defendants were required to plead to the amended and substituted petition on or before noon of the second day of the January, 1906, term of said court. On the same day, on application by the county attorney, the court entered an order permitting W. H. Bailey, Esq., and Thomas A. Chesire, Esq., counsel who represented the original relators, to assist the county attorney in prosecuting the action. On January 3, 1906, the railway company moved to strike the amended and substituted petition, and dismiss the action on the following

grounds: (1) The State of Iowa is not the real party in interest. (2) There is no showing made which entitles the State to the relief demanded. (3) The city of Des Moines is vested with the sole power to permit or forbid the construction of a street railway within its limits, and therefore the question whether the defendant is rightfully occupying the streets is purely one of local interest, and does not in any manner concern or affect the State or its interests. (4) The controversy pertains solely to matters of contractual rights between the city and the railway company. (5) Nothing is shown to have been done or omitted which can work a forfeiture of the company's rights and privileges. (6) The order, permiting the action to be brought by the private relators, was improvidently granted, and when that order was vacated the action was thereby abated, and could not be continued or further prosecuted by the county attorney. (7) The filing of the amended and substituted petition by the county attorney is an attempt on his part to commence an original action without compliance with the requirements of the law in that respect; and (8) The court has no power or jurisdiction to authorize the amended and substituted petition or to require defendant to plead thereto. This motion was overruled, and thereupon said defendant appealed to this court from the order denying its motion to dismiss " and from all other rulings adverse to the defendant." Afterward and at the same term the trial court, on motion of said defendant, entered an order suspending further proceedings in said cause pending the decision of the appeal from the motion to dismiss. Thereafter the plaintiffs and relators appealed from the several rulings of the trial court adverse to them. The railway company, having first appealed, will be designated the " appellant " in this court.

Concerning the case against the Interurban Railway Company it may be said that at the time of inaugurating the proceedings hereinbefore referred to the same relators

presented to the county attorney another notice alleging that the Interurban Company was wrongfully assuming the right to construct, operate, and use a system of street railways in Des Moines without having any franchise, right, or authority so to do, and requesting said county attorney to institute and prosecute an action to test said company's right to such privilege. The county attorney refused to comply with the request and thereafter the proceedings in said cause were in all respects identical with those in the preceding case against the Des Moines City Railway Company. In view of the importance of the questions presented and of the interests involved, and in order that the controversy may be examined in all of its bearings, we have felt justified in setting out in unusual and somewhat tedious fullness the history of this litigation from its initial step to the taking of the appeals. Before entering upon the consideration of the law of the case we may remark that the briefs of counsel have been prepared with much care, and have afforded the court great assistance in tracing and ascertaining the trend of the authorities bearing upon cases of this nature; but the citations are so very numerous that it will be wholly impracticable for us to attempt anything like a review of them and, save in a few instances, we shall content ourselves with a statement of our views as derived from their study without burdening the discussion by quotations.

I.   For want of a better term we may speak of the case before us as a " *quo warranto* proceeding," or " proceeding in the nature of *quo warranto*," yet in the strict common-law sense of the term it is neither, and care must be taken to avoid being misled at times by precedents established in jurisdictions where the ancient procedure is still preserved.

1. MUNICIPAL CORPORATIONS: franchise: usurpation of rights: action in name of State.

*Quo warranto* had its origin in the theory that all special privileges (franchises) which are conferred upon an individual or corporation, and do not belong to the citizens of the country generally as a matter of common

right, are the gift or grant of the king. When, therefore, it was claimed that such special privilege had been usurped without gift or grant thereof from the sovereign, or where the privilege so conferred was alleged to have been abused or the conditions thereof had not been observed a writ was issued at the suit of the crown requiring the party charged with the usurpation to appear and show by what warrant or authority he assumed to exercise the privilege thus challenged. The use of the writ in this form was superseded by what was termed " proceedings in the nature of *quo warranto* " which were prosecuted by leave of court upon information duly filed. This practice was recognized by statute 9 Anne, 20, by which it was made lawful for the proper officer " to exhibit an information in the nature of *quo warranto* at the relation of any person or persons desiring to sue or prosecute the same," and further provided for a speedy hearing and disposition of the controversy. This statute, with more or less modification, was adopted at an early date in many of the older States of the Union, and in some of them the practice thus instituted still prevails. Both *quo warranto* and proceedings in the nature of *quo warranto* partook of the character of criminal proceedings. The verdict upon the trial was " guilty " or " not guilty," and upon a verdict of guilty the defendant was not only liable to ouster from the usurped franchise, but also to a fine for his wrongful act. 3 Blackstone's Com. 263; *People v. Insurance Co.,* 15 Johns. (N. Y.) 358 (8 Am. Dec. 243). In most of our jurisdictions, however, this practice has been largely superseded by special statutory enactments providing a remedy by a civil action to be prosecuted in a manner closely analogous to ordinary actions at law. The effect of these statutes is to render many of the cases decided under the ancient practice of but slight, if any, value in determining the rights of the parties. Moreover, the statutes of the several States adopting substitutes for the former practice, while having the same general purpose, are so dissimilar in

detail that cases involving similar states of facts do not necessarily afford authoritative precedents except for courts of the jurisdiction in which they have been determined.

Our statute (Code, title 21, chapter 9) avoids any use of the words " *quo warranto* " or " proceedings in the nature of *quo warranto*." It provides that a civil action by ordinary proceedings may be brought in the name of the State: " (1) Against any person unlawfully holding or exercising any public office or franchise within this State. . . . (4) Against any corporation doing or omitting acts which amount to a forfeiture of its rights and privileges as a corporation or exercising powers not conferred by law." Code, section 4313. " Such action may be commenced by the county attorney at his discretion. . . ." Code, section 4315. " If the county attorney on demand neglects or refuses to commence the same any citizen of the State having an interest in the question may apply to the court in which the action is commenced for leave to do so and, upon obtaining such leave, may bring and prosecute the action to final judgment." Code, section 4316. Pleading and practice are " to conform to the rules given for procedure in civil actions generally except so far as the same are modified by this chapter." Code, section 4317. If the defendant is found to be unlawfully holding or exercising any office or franchise or privilege, or if a corporation is found to have violated the law by which it exists or to have done acts amounting to a surrender or forfeiture of its corporate privileges, judgment of ouster and exclusion from such office or franchise is to be entered. Code, section 4324. But if the defendant be found to have exercised merely certain individual powers or privileges to which he is not entitled, the judgment of ouster is to be limited to the particular right or privilege which the party is found to have usurped. Code, section 4325. The effect of this statute seems to be to secure the essential purpose formerly effected by *quo warranto* and proceedings in the nature of *quo warranto,* i. e., the vindication of public

rights and public interests against usurpation, by invoking the ordinary powers of the court and conforming to the ordinary rules of procedure, subject only to the modification expressly mentioned in the cited chapter. In applying these rules and giving effect in this procedure, we may, of course, look to the practice at common law and in our sister States for such light and assistance as they may afford.

The first objection raised in argument by appellant is based upon the vital proposition that the controversy indicated by the pleadings involves a mere matter of contractual rights and obligations between the railway company and the city in which neither the State nor the general public has any interest, and is therefore not triable in proceedings of this kind whether instituted upon the relation of the county attorney or of private citizens. This position finds support in the decisions of the courts of Illinois and Michigan. *People ex rel. v. Gas Light Co.,* 38 Mich. 154; *Belleville v. Railway Co.,* 152 Ill. 171 (38 N. E. 584, 26 L. R. A. 681); *Board of Trade v. People,* 91 Ill. 80. But, as we read the books and consider the principles involved, the rule thus announced is not supported by the weight of authority or by the better reason. Of course, if the term " franchise " is to be limited to the mere right to corporate existence, then without doubt rights obtained subsequent to the incorporation and based upon grants from or contracts with a municipality would not come within the definition, and it would be at least questionable whether an action under the statute to test corporate rights would lie for their abuse or usurpation. But it is a thoroughly well-established proposition that rights granted to a corporation, either directly or by the State indirectly through the act of a minor municipality authorized by the State, are to be regarded as franchises no less than is the right to be a corporation. Both classes of rights are derived mediately or immediately from the State, and both are subject to the inherent power of the State to guard against their abuse by the grantee or usurpation by a

wrongdoer. The occupation of the public street for rail-
way purposes is not a matter of common right, and without
a legislative grant therefor the construction or maintenance
of such a railway would expose the party responsible therefor
to punishment as for a nuisance. The municipality to which
is given authority to grant such a privilege exercises a dele-
gated power only, and it cannot grant to any person or cor-
poration a privilege which is confessedly in derogation of
the common right, in a manner which shall exclude the
power of the State to inquire into its abuse, or to prevent
the subversion of the public interests which the legislative
grant was intended to promote. Such, except in the two
States above named, is the practically universal holding of
the courts. A right granted to a corporation to maintain a
toll bridge upon a public highway or to establish a ferry is
a franchise. *Canal Co. v. Railroad Co.,* 11 Leigh (Va.) 78
(36 Am. Dec. 374). The right to construct and operate a
street railway or other similar public utility is a franchise
derived from the State. *Milhau v. Sharp,* 27 N. Y. 611
(84 Am. Dec. 314); *Davis v. N. Y.,* 14 N. Y. 532 (67 Am.
Dec. 186); *People v. Railroad Co.,* 117 Cal. 604 (49 Pac.
736); *Railroad Co. v. Denver City R. R.,* 2 Colo. 682. See,
also, *State v. Gas Light Co.,* 18 Ohio St. 262; *People v. In-
surance Co.,* 15 Johns. (N. Y.) 387; *Charles River Bridge
v. Warren Bridge,* 11 Pet. (U. S.) 420 (9 L. Ed. 773, 938);
*Turnpike Co. v. Campbell,* 44 Cal. 89; *Waterworks v. Schott-
ler,* 62 Cal. 69; *State v. Boston R. R. Co.,* 25 Vt. 433;
*Water Co. v. Cedar Rapids,* 118 Iowa, 238; *State v. R. & L.
Co.,* 13–23 Ohio Cir. Ct. R. 603; *State v. Traction Co.,* 18
Ohio Cir. Ct. R. 490; *Wright v. Railroad,* 95 Wis. 29 (69
N. W. 791, 36 L. R. A. 47, 60 Am. St. Rep. 74); *State v.
Railroad,* 140 Mo. 539 (41 S. W. 955, 38 L. R. A. 218, 62
Am. St. Rep. 742); *Gas Company v. Dwight,* 29 N. J. Eq.
242; *State v. East Fifth R. R. Co.,* 140 Mo. 539 (41 S. W.
955, 38 L. R. A. 218, 62 Am. St. Rep. 742); *Morgan v.
Louisiana,* 93 U. S. 223 (23 L. Ed. 860); *Electric Co. v.*

*Milwaukee,* 95 Wis. 39 (69 N. W. 794, 36 L. R. A. 45, 60 Am. St. Rep. 81).

The precise point is discussed in *State v. Railroad,* 72 Wis. 612 (40 N. W. 487, 1 L. R. A. 771), where Orton, J., says:

The contention of learned counsel is that the ordinance confers no corporate privileges or franchises, and that it is a mere contract between the company and city for the breach of which the city has the usual remedy by action, and that the company has not offended against any law by or under which it was created, as the only possible cause at this time mentioned in the statute for a forfeiture of its charter and for this proceeding against it in the nature of quo warranto. The acceptance by the company of these conditions of the ordinance constitutes a contract without doubt, and so does the acceptance of a legislative charter by the incorporators, but it is clearly something more and above a mere contract. . . . The common council in passing the ordinance acted as the agent of the State and as public officers by virtue of such delegated authority. The streets are for the public use and so are the street railways, affording increased advantages and facilities to the public, and they are primarily under the control of the Legislature, and the power of the municipalities in respect thereto is entirely derived from the Legislature. . . . The immunities and privileges granted to the company by the ordinance are as much the franchises of the corporation as if they had been directly granted by the statute under which it was organized. The common council of the city is authorized to grant them by the statute, and such power is a delegated one. What the common council does within that power is done by the Legislature through its agency. The public has an interest in these franchises. The power to grant them, therefore, must be derived from the Legislature.

For these reasons it was held that proceedings in the nature of *quo warranto* would lie for an alleged failure of the corporation to observe the terms and conditions of the right granted to it by the city to occupy the streets with its railway. Says the Supreme Court of Minnesota: " Fran-

chises are here, as in England, privileges of the sovereign in the hands of the subject. Whoever claims an exclusive privilege with us must show a grant from the Legislature. A privilege or immunity of a public nature which cannot be legally exercised without legislative grant is a franchise. 2 Blackstone's Com. 37; 2 Kent's Com. 459." That the right to occupy the public streets with a railway depends entirely upon legislative grant and is therefore a franchise, notwithstanding the fact that the terms of such grant and their acceptance constitutes also a contract, is too well settled to be open to serious question. 27 Am. & Eng. Ency. Law (2d Ed.) 8.

Not only is the application of *quo warranto* or its statutory substitute to cases of this kind upheld by the overwhelming weight of authority, but it is clearly in accord with the dictates of sound public policy. To say that the State has surrendered to the city all its power and authority to protect public interests against usurpation, neglect, or abuse by a corporation of its own making, and that so long as the city authorities are content to remain quiescent the State is powerless in the premises, is to say that the State may surrender its sovereignty and the Legislature estop itself by an abdication of its legislative power. Even the State itself cannot constitutionally authorize the occupation of the street for anything but a public purpose, and if a city government by its indifference to public interests or by a mistaken estimate of its own power in the premises permits a corporation to occupy its streets without legal right to such franchise or to assume without authority other rights which are not common to the people generally, the State has the inherent and reserved right to call upon such corporation to show by what warrant it assumes to hold or exercise such franchise. The right and power of the State over its highways, roads, and streets and its duty to preserve and protect these avenues of public travel against unlawful encroachment and obstruction are as wide as its territorial

jurisdiction. The objections therefore that this action cannot lie in the name of the State cannot be sustained.

II. It is further contended that the Code confines the remedy to certain specified cases none of which contemplates a controversy of this kind. With this we cannot agree. As we have already noted, the Code

2. SAME: expiration of franchise.

provides for the proceeding against any person unlawfully holding or exercising a franchise, and against any corporation for acts for which its corporate rights may be forfeited or for exercising powers not conferred by law. It is the claim of the plaintiff, the truth of which we cannot determine on this appeal, that the franchise under which the railway company asserts the right to occupy the streets has long since expired and has never been renewed or extended. If this claim be established, then the company is exercising a franchise without warrant of law. *Inclined Plane R. Co. v. Cincinnati,* 52 Ohio St. 609 (44 N. E. 327); *Bridge Co. v. Prange,* 35 Mich. 400 (24 Am. Rep. 585); *Water Co. v. Cedar Rapids,* 118 Iowa, 246. That a corporation is a " person " within the meaning of this statute, and may therefore be subjected to the remedy there provided for unlawfully exercising a franchise, see *State v. Gas Co.,* 28 Wash. 488 (70 Pac. 114); *People v. Sutter R. R. Co.,* 117 Cal. 606 (49 Pac. 736); *People v. Oakland,* 92 Cal. 611 (28 Pac. 807); *State v. Railroad Co.,* 116 Wis. 142 (92 N. W. 546). So, also, as the company cannot occupy the streets except by virtue of a grant by the State through the agency of the city, it follows, we think, that if such grant has expired, and has never been renewed or extended, the continued occupancy and use of the street by the corporation constitute within the meaning of the statute the exercise of a " power not conferred by law."

III. Much attention is given by counsel to the proposition that the private citizens named as relators in the inception of these proceedings have no such interest in the matters complained of as entitles them to appear in that

capacity.    We regard this question as immaterial upon the
defendant's appeal.    The statute provides

**3. PROCEEDINGS IN NATURE OF QUO WARRANTO: who may institute: interest of private prosecutor.** that the action may be begun upon the relation of the county attorney " at his discretion." He is not required to await the initiative of a private informant, but whenever, in his judgment, there is a cause of action of this nature, he may proceed on his own motion and without preliminary leave by the court.    If he fails or refuses so to act when requested, then any person " interested in the question " may institute the action, having first obtained the leave of the court so to do.    The record in this case shows the request, the county attorney's refusal, the granting of leave by the court to the relators and the institution of the action.    Thereafter and before issue joined, the county attorney did appear, filed a new and substituted petition, served a new original notice, and the appellant appeared thereto by the counsel who still represent it.    In our judgment, so far as this particular phase of the case is concerned, we may treat all that went before the appearance of the county attorney as eliminated from the record, and regard the prosecution as being then instituted.    The petition then filed and the original notice then served were all that would have been necessary for the proper inception of the proceedings by the public prosecutor had the private relators never moved in the matter, and the appearance thereto by the company gave the district court jurisdiction of the parties, as it unquestionably had of the subject-matter.    Such jurisdiction, having been acquired, it would seem that nothing remains save to settle the issues and proceed to trial upon the merits of the dispute.

In avoidance of this suggestion it is argued that an action begun by the county attorney should be in the name of the State alone by the public prosecutor as its attorney and not " upon relation of " such prosecutor,

**4. SAME: parties plaintiff.** while the action before us was begun upon the relation of private citizens and the prosecutor seeks simply

to succeed them in the capacity of relator. It is further said that a relator may appear only to vindicate or protect a private right, while the public prosecutor may institute the proceedings for the protection of a public right or interest. We think this is a misconception of the office of *quo warranto* and of the statutes providing for proceedings of that nature. The paramount purpose of this remedy is the protection of public interests, whether it be invoked by the public prosecutor or by a private citizen, and to the effectuation of this purpose the protection of private interests which may be involved in this controversy is only incidental. The authority given any person who is interested in the question to take up the controversy is not simply to give such person a remedy for his private wrongs, but to open a way by which when the proper officer fails or refuses to do his duty in the premises any such person may put the machinery of the law in motion, and by the protection of his private interests, even though of comparatively little moment, vindicate and establish the more important interests of the public.

Whether the prosecution be styled as in the name of the State alone or in the name of the State upon the relation of a designated officer or private citizen, is a matter of absolutely no moment under our practice. The expression " upon the relation of," etc., means no more than " upon the complaint of," etc., or " upon the information of," etc. Its use adds nothing to and its omission detracts nothing from the force and effect of the alleged cause of action as disclosed by the pleadings. The State is the plaintiff in each instance. It is, however, the time-honored though not universal method to mention the person who institutes the proceedings as the relator, and this is no less true when that person is the Attorney-General, or County Attorney, than when he is a private citizen. Indeed, it will be the rare exception to find the distinction contended for by the appellant indicated in any case arising in any of the States. We have no statutory regulation in this respect. The County

Attorney was vested with the right to bring the action, and whether he styled the plaintiff " The State of Iowa," or " The State of Iowa, upon the relation of Jesse A. Miller, County Attorney," is not a vital question so long as he pleads a state of facts which authorizes him to bring it at all. *Cheshire v. Kelly,* 116 Ill. 493 (6 N. E. 486). Even where it is held that a relator must be joined as plaintiff, a defect in this respect may be cured by amendment after suit brought. *People v. Walker,* 23 Barb. (N. Y.) 304. In Oregon it is held that the relator is not a party to the proceeding and as such cannot control it. *State v. Road Co.,* 10 Or. 198. So, also, in Michigan. *People v. Pratt,* 15 Mich. 184. In Alabama the private relator cannot confess error or dismiss the suit without the leave of court. *Scientific, etc., Ass'n v. State,* 58 Ala. 54. The court will not dismiss an information in the nature of *quo warranto* because the relator was named as such without his authority, but he may withdraw from the case if he will, and the court will permit the public prosecutor to proceed with the case alone. *People v. Knight,* 13 Mich. 230. See, also, *Matthews v. State,* 82 Tex. 577 (18 S. W. 711).

Although the *Knight* case here cited involved the relator's right to an office and thus directly affected his private interest, the court holds that his interest is only incidental, and that the proceeding is allowed on the theory that offices are designed for the public benefit and not for private emolument and the tenure of them by persons legally elected or appointed is a matter mainly of public concern. It says the law never " contemplated that the public interest should be controlled by private action. The Attorney-General does not act as a mere private agent. He may always interfere on his own volition." Of this claimant to the office it is also said: " He cannot interfere with the Attorney-General in his official duty, but the court would allow him to co-operate in such manner as not to embarrass the course of justice." The information or complaint in *quo warranto* is like other

pleadings subject to amendment. *Com. v. Bank,* 28 Pa. 383; *Com. v. Graham,* 64 Pa. 339; *State v. Gleeson,* 12 Fla. 190. The Texas court holds that the County Attorney may file a supplemental or amended information without the concurrence of the relator, so long at least as he sets forth substantially the same cause of action which the relator has before attempted to plead. *Hunnicut v. State,* 75 Tex. 233 (12 S. W. 106). And even where the relator is found to be estopped or disqualified to prosecute the action in his own private interest it has been held that the court will retain jurisdiction and pass upon the merits of the case so far as it affects public interest. *People v. Londoner,* 13 Colo. 303 (22 Pac. 764, 6 L. R. A. 444). In short, although this remedy is of a special and extraordinary character, it is designed, nevertheless, to effect a speedy and effective means of settling a class of disputes affecting public interests, and the salutary purposes of the statute which provides it should not be thwarted by a narrow and technical construction. If the case made by the petition be one in which the statutory remedy may be invoked, if the proper officer is in court assuming responsibility for its prosecution, and if due notice of the proceeding has been given to the party named as defendant, every preliminary essential to the jurisdiction of the court to hear and try such complaint has been observed. Such we find to be the record, and the objection to the jurisdiction of the court must be overruled. It follows from what we have said that there was no prejudicial error in the several rulings of which appellant makes complaint.

IV. In view of the plaintiff's appeal it becomes necessary for us now to consider the ruling of the trial court by which, upon appearance in the action by the county attorney, the defendant's motion to dismiss the private

5. SAME: right of property owners to sue.

relators was sustained. The principal ground of that motion was that relators did not show any such private interest in the question as would permit their assuming the prosecution, and that therefore the leave

given them to institute the action was improvidently granted. What will be considered a sufficient interest in the relator in such cases has often been considered by the courts, and it must be admitted it is very difficult to deduce from the various holdings any well-defined rule or standard by which the inquiry may be satisfactorily answered. If there be a preponderance of authority on the question it is to the effect that a slight interest only is all which is necessary to qualify a person to apply for leave to prosecute the action. *State v. Vail,* 53 Mo. 110. The only reason for requiring any qualifying interest is to guard the courts and persons who do have an interest against being burdened with litigation at the instance of a mere intermeddler. Among the cases decided we may note the following: One who is a citizen and taxpayer may file an information charging the respondent with usurping a public office. *Taggart v. James,* 73 Mich. 234 (41 N. W. 262); *People v. Londoner,* 13 Colo. 303 (22 Pac. 764, 6 L. R. A. 444); *Commonwealth v. Browne,* 1 S. & R. 382. One who has dedicated a highway to public use may maintain *quo warranto* to test the right asserted by another to maintain a toll bridge thereon. *Welchel v. State,* 76 Ga. 644. A citizen of the State has such interest in the location of the State University that he may bring an action to test the validity of the removal of one of its departments to another city. *People v. Regents,* 24 Colo. 175 (49 Pac. 286). An owner of property, though neither a resident nor voter, may be a relator to test the validity of an extension of the corporate limits of a city. *State v. Dimond,* 44 Neb. 154 (62 N. W. 498); *State v. Jenkins,* 25 Mo. App. 490. The relator may be permitted to appear upon showing any reasonable ground. *Camman v. Mining Co.,* 12 N. J. Law, 84.

This court has held that a taxpayer in a nominal amount only may in this manner question the jurisdiction of a city over territory included within its extended limits. *State v. Des Moines,* 96 Iowa, 521. See, also, *State v. Barker,* 116 Iowa, 99. We have also expressly held that the owner of

abutting property does have " a right to and interest in the street distinct and different from that of the general public." *Long v. Wilson,* 119 Iowa, 269; *Cook v. Burlington,* 30 Iowa, 94; *Warren v. Lyons,* 22 Iowa, 351. Elliott on Roads, section 877; *Park v. Railroad Co.,* 43 Iowa, 636; *Dairy v. Railroad Co.,* 113 Iowa, 716. Cases may be found announcing a different rule, but we think our own decisions are supported by the better reason, and are not disposed to depart from these precedents.

If this conclusion be not decisive of the question, it is also to be said that the matter of granting leave to a private relator to bring an action is merely a preliminary question addressed to the discretion of the court or judge, and, once decided, that discretion is exhausted, and a ruling granting the leave is not to be reviewed or collaterally attacked upon a motion to set aside or to dismiss. *Des Moines v. West,* 96 Iowa, 521; *State v. Alexander,* 129 Iowa, 538; *State v. Brown,* 5 R. I. 1; High on Extr. Legal Remedies, section 606; *State v. Shank,* 36 W. Va. 223 (14 S. E. 1001); *People v. Regents,* 24 Colo. 175 (49 Pac. 286); *State v. Elliot,* 13 Utah, 200 (44 Pac. 248); 2 Spelling's Ex. Remedies, section 1777; *Martens v. People,* 186 Ill. 314 (57 N. E. 871); *State v. Vail,* 53 Mo. 110. Whether such a motion would be considered if it be charged that leave to prosecute was obtained by fraud we need not here decide. If the alleged interest of the relator be a matter upon which the defendant in *quo warranto* may take issue, that right is in no manner concluded or abridged by the order granting leave to sue. That order determines nothing except the privilege or authority of the relator to institute and prosecute the suit. Every essential fact to establish the right to the relief demanded must be proved upon the trial without any reference to the preliminary order or proceeding.

Nor do we find any merit in the point suggested that the leave to sue was granted without notice to the defendants.

6. SAME: leave to sue: discretion.

It is a sufficient answer to say that the statute does not re-
quire notice, and we cannot conceive how the
failure to so provide lays the statute open to
the constitutional objection raised by counsel.

7. SAME: leave to sue: notice of application: constitutional law.

The granting of leave does no more than to
designate the relator as a person who may lawfully call the
defendants into court for the trial of a disputed question of
law or fact according to the ordinary course of procedure.
It adjudicates nothing against the defendants. It takes from
them no personal or property rights. No one is deprived
of the benefits of due process of law or denied the equal
protection of the law. In the opinion of many the four-
teenth amendment to the federal Constitution has quite fre-
quently been made to do duty in cases not within the con-
templation of its framers, but we are very sure no precedent
can be found indulging so great a latitude of construction as
would be required in order to sustain the position of counsel
in this respect. It would doubtless be within the discretion
of the court, upon being applied to for leave to bring the
suit, to order notice served upon the defendant to show cause
why leave should not be granted, and under some circum-
stances such would be a commendable practice, but the stat-
ute does not require it, and failure to make such order is
not error. *People v. Golden Rule,* 114 Ill. 34 (28 N. E.
383); *Gilroy v. Commonwealth,* 105 Pa. 484.

Being of the opinion, therefore, that the relators were
possessed of sufficient interest in the question to support an
order granting them leave to begin and prosecute the action,
and that such order is not subject to collateral
attack by the defendant, we are disposed to
hold that the order dismissing relators from
the case without a trial upon the merits of the complaint
was erroneous., The leave had been granted and acted
upon. The action had been begun and petition filed stating
a cause of action. The office of the order granting leave had
been fully performed, and the plaintiffs were in court. If

8. SAME: parties: joinder.

the county attorney having changed his mind concluded to come in and unite in the prosecution, we see no reason why, as suggested by the Michigan court in *People v. Knight, supra,* such co-operation could not be permitted if the relators consent thereto. It is quite clear that if, as we hold, the relators were proper persons to whom leave to prosecute might properly be granted, the appearance by the county attorney and his offer to unite in the prosecution afforded no ground for the compulsory dismissal of the relators, and they are entitled to be reinstated to that position.

In this connection, it is proper to observe that the petition is not grounded upon any claim of right to demand forfeiture of an existing franchise because of breach of the conditions upon which it was granted. It may be conceded that the enforcement of such conditions — that is, those imposed by the city itself and not by statute — may be waived by the same power which exacted them. And in such case *quo warranto* at the suit of the county attorney or private relator ordinarily would not lie. But the principal claim here put forth against the City Railway Company is that its franchise has expired and ceased to exist by the terms of the grant which created it and by force of the statute which authorized it; and as against the Interurban Company that it occupies the streets of the city without having received any franchise or legal authority so to do. Whether these allegations are true is a question for the trial court in the first instance to determine. Upon this appeal we are not concerned with the truth of these allegations or with the plaintiff's ability or want of ability to sustain them by sufficient proof. We have only to inquire whether they have made such a showing as, if made good by the evidence, affords a proper case or an application of the remedy here invoked. This we think has been done.

V. In view of the fact that both parties have appealed, and a ruling now upon the questions presented may be of value in the further progress of the case, we have not

been disposed to look very critically into the question of the
appealable character of the rulings and or-
9. APPEAL: inter-    ders of which complaint is made, but we do
   locutory orders.
not wish to be considered as thereby commit-
ting ourselves upon that question when raised and in-
sisted upon in a proper case. It is certainly not the pol-
icy of the law to permit either party to a controversy to
prolong litigation and embarrass the course of justice by
prosecuting an appeal from every interlocutory ruling of the
trial court. *Bank v. Dutcher,* 128 Iowa, 425. Ordinarily,
every substantial right of the parties can be effectually pro-
tected by preserving a proper record, and presenting the
questions thus saved upon appeal from final judgment. We
reach the conclusion upon the record before us that the rul-
ing of the district court, dismissing the relators from the
case, must be reversed, and that in all other respects the
rulings of the said court will be affirmed on both appeals.—
*Affirmed* in part, and *reversed* in part.